**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-7301**

_____

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

TERRENCE SMITH,

                Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:05-cr-00061-JFM-6; 1:11-cv-00953-JFM)

_____

Argued: May 14, 2013             Decided: July 25, 2013

_____

Before TRAXLER, Chief Judge, and NIEMEYER and FLOYD, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Floyd joined.

_____

**ARGUED:** C. Justin Brown, LAW OFFICE OF C. JUSTIN BROWN, Baltimore, Maryland, for Appellant. Albert David Copperthite, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

_____

NIEMEYER, Circuit Judge:

In his § 2255 motion, filed in the district court, Terrence Smith challenged the jury instruction given in his underlying trial for witness tampering as defined in 18 U.S.C. § 1512(a). Specifically, Smith argued that the instruction misstated the federal nexus required for the offense, given the Supreme Court's decision in Fowler v. United States, 131 S. Ct. 2045 (2011). Fowler, which was handed down after Smith's conviction became final, abrogated Fourth Circuit precedent on which the jury instruction was based. The district court concluded that the instruction did indeed violate Fowler and that Fowler created a new substantive right that should be afforded to Smith. But it found that the effect or influence of the error was harmless and therefore denied Smith's § 2255 motion.

In reviewing the district court's order, we apply to this § 2255 case the same harmless-error standard that we do in § 2254 cases, as articulated in Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (holding that error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict" (internal quotation marks omitted)), rather than the standard of review for harmless error on direct appeal, see Chapman v. California, 386 U.S. 18, 24 (1967) (holding that on direct appeal, an error must be harmless beyond a reasonable doubt). Under Brecht, we conclude that the

2

instructional error did not have a substantial and injurious effect or influence in determining the jury's verdict. We therefore find that the error was harmless and accordingly affirm the district court's order denying Smith's § 2255 motion.

I

On January 15, 2005, members of the Bloods gang in the Harwood neighborhood of Baltimore, Maryland, firebombed the home of Edna McAbier, who was the president of the Harwood Community Association. On the night of the attack, Terrence Smith, the leader of the gang, called a meeting of the gang's membership at his house and told them that he wanted to firebomb McAbier's house in retaliation for her contacting the police about drug activity in the neighborhood. McAbier had indeed been contacting the Baltimore City Police Department "[p]ractically every day" by telephone or email about drug-related activity in her neighborhood and had provided the Department with a detailed log of criminal activity in the community, complete with names and addresses of suspected individuals. Following the gang's meeting, members carried out the attack, using gasoline-filled beer bottles.

Smith and other gang members were indicted and convicted for this conduct. Among the five counts on which Smith was convicted, three involved witness tampering: two substantive

3

counts for violations of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 1512(a)(2)(C), respectively, and one conspiracy count.

At the close of the government's case, Smith filed a motion for a judgment of acquittal, arguing that the government had failed to establish the federal nexus required to convict him under the witness tampering statutes because the government failed to show that McAbier had contacted federal authorities or was likely to do so.[*] The government argued that the federal nexus was established as a matter of law because drug trafficking, about which McAbier complained, was a federal offense. After an extended discussion, the district court denied Smith's motion for acquittal but granted a motion by the government to reopen its case to present additional evidence regarding the likelihood that McAbier's complaints would have been referred to federal authorities.

Special Agent Robert Brisolari of the Drug Enforcement Administration ("DEA") then testified that the Baltimore City Police Department was the "biggest source" of referrals for drug

---

[*] Prescribing the federal nexus, § 1512(a)(1)(C) punishes "[w]hoever . . . attempts to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense"; and § 1512(a)(2)(C) punishes "[w]hoever uses physical force . . . with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense."

4

cases to his field office and that it contributed the most officers to local DEA task force groups. He stated that six of the nine task force groups in the area were joint task forces, "meaning that they're comprised of [federal] agents as well as sworn task force officers from other police departments." He also explained that the DEA accepts cases that "are considered street level trafficking," especially when "street level drug organizations [are] involved in crack cocaine, heroin or cocaine."

At the close of the evidence, the district court instructed the jury that to establish the necessary mens rea for witness tampering, the government must prove that Smith "acted knowingly and with the unlawful intent to induce Mrs. McAbier to hinder, delay, or prevent the communication of information to a law enforcement officer of the United States." The court continued:

> In order to satisfy [the intent] element, it is not necessary for the government to prove that the defendant knew he was breaking any particular criminal law nor need the government prove that the defendant knew that the law enforcement officer is a federal law enforcement officer. What the government must prove is that there was <u>a possibility or likelihood</u> that the information being provided by Ms. McAbier about drug activities would be communicated to a law enforcement officer of the United States, irrespective of the governmental authority represented by the officers to whom she personally communicated information.

(Emphasis added).

The jury convicted Smith on all counts, and the district court sentenced him to 960 months' imprisonment. On direct appeal, Smith argued that the district court misinstructed the jury on the witness tampering counts, and we rejected Smith's arguments, finding that the federal nexus required by the offense was satisfied because "[a] portion of the potential investigation that [the defendant] sought to prevent 'happened to be federal' because drug trafficking is a federal offense." United States v. Harris, 498 F.3d 278, 286 (4th Cir. 2007). We explained further, "So long as the information the defendant [sought] to suppress actually relate[d] to the commission or possible commission of a federal offense, the federal nexus requirement [was] established." Id. Responding to Smith's argument that the government failed to prove the "'possibility' that the information that McAbier would have provided would have been communicated to federal authorities," we stated that "the federal nature of the offense at issue at least created the possibility that she might have decided in the future to contact federal authorities." Id. at 286 n.5. Although we affirmed Smith's convictions, we remanded the case to correct a sentencing error.

At resentencing, Smith again received a 960-month sentence, and we thereafter affirmed. United States v. Smith, 344 F. App'x 856 (4th Cir. 2009) (per curiam). The Supreme Court

6

denied Smith's petition for a writ of certiorari. Smith v. United States, 130 S. Ct. 2417 (2010).

On April 12, 2011, Smith filed a motion under 28 U.S.C. § 2255, raising numerous issues regarding the effectiveness of his trial counsel. Shortly thereafter, the Supreme Court decided Fowler v. United States, 131 S. Ct. 2045 (2011) (rejecting the "possibility" of a federal communication as the appropriate standard for satisfying the federal nexus and holding that the government had to prove a "reasonable likelihood" of such communication). Smith then filed a supplement to his § 2255 motion, challenging the witness tampering instruction at his trial, inasmuch as the instruction allowed the jury to find that the defendant interfered with the mere "possibility" of the witness' communication to federal authorities.

The district court acknowledged the applicability of Fowler's holding to Smith's trial but found that the instructional error was harmless. It noted that "the evidence at trial established that federal and local authorities worked closely with one another through DEA task forces and that the task forces targeted the very type of criminal activity -- violent street drug trafficking." The court concluded that it was "virtually inevitable that the information

7

provided by Ms. McAbier would eventually be communicated to federal authorities and that federal prosecution would ensue."

Smith filed a timely notice of appeal, and the district court granted his motion for a certificate of appealability.

II

In instructing the jury at the underlying trial on federal witness tampering, the district court stated, as relevant to the required federal nexus of the conduct, that the government must prove that "there was a <u>possibility or likelihood</u> that the information being provided by Ms. McAbier about drug activities would be communicated to a law enforcement officer of the United States." The instruction given was consistent with then-existing Fourth Circuit precedent, as we recognized on Smith's direct appeal. <u>See</u> <u>United States v. Harris</u>, 498 F.3d 278, 284-86 (4th Cir. 2007).

After Smith's conviction became final and he had filed his § 2255 motion, the Supreme Court handed down its decision in <u>Fowler v. United States</u>, 131 S. Ct. 2045 (2011), in effect overruling <u>Harris</u>. <u>Fowler</u> held that the witness tampering statute, 18 U.S.C. § 1512, requires the government to show a "reasonable likelihood" that, had the victim communicated with law enforcement officers, at least one of the communications would have reached a federal officer. <u>Id.</u> at 2052. In defining

8

the reasonable-likelihood standard, the Court explained that the government "need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it [was] more likely than not." Id. (emphasis added). But the government is required to show "that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." Id.; see also United States v. Ramos-Cruz, 667 F.3d 487, 495 (4th Cir. 2012) (applying the Fowler standard).

In considering Smith's § 2255 motion, the district court agreed with Smith that Fowler created a new right that was applicable to Smith and that, under Fowler, the instruction that it gave was now erroneous. But it concluded that the error was harmless.

Smith now contends either that the error was structural and therefore not subject to harmless-error analysis or that it was, in fact, not harmless.

To begin with, we agree that the Fowler right has been "newly recognized" by the Supreme Court and that it is retroactively applicable to cases on collateral review. See 28 U.S.C. § 2255(f)(3); Teague v. Lane, 489 U.S. 288 (1989). The Fowler right, by changing the standard for determining the federal nexus in witness tampering, placed the conduct covered by the district court's jury instruction beyond the scope of

9

conduct made criminal by the statute. See United States v. Bousley, 523 U.S. 614, 620 (1998).

That brings us to Smith's first argument -- that the instructional error was "not amenable to harmless error review," because it was "a fundamental error in the proceedings." See Sullivan v. Louisiana, 508 U.S. 275, 279-82 (1993). In short, he argues that the error was structural and thus subject to automatic reversal.

It is true that structural errors "require reversal without regard to the evidence in a particular case," United States v. Curbelo, 343 F.3d 273, 281 (4th Cir. 2003) (internal quotation marks omitted), because they "affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself," Arizona v. Fulminante, 499 U.S. 279, 310 (1991). But the Supreme Court has found errors to be structural in only a "very limited class of cases." Johnson v. United States, 520 U.S. 461, 468 (1997). Thus, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Rose v. Clark, 478 U.S. 570, 579 (1986).

The instructional error in this case, which related only to the federal nexus for witness tampering, did not taint the trial "from beginning to end," nor did it undermine "the framework

10

within which the trial proceed[ed]." Fulminante, 499 U.S. at 309-10. Indeed, the Supreme Court has noted that even a "jury instruction that omits an element of the offense" does not "necessarily render a trial fundamentally unfair." Neder v. United States, 527 U.S. 1, 8 (1999) (emphasis added) (internal quotation marks omitted); see also United States v. Jefferson, 674 F.3d 332, 362-64 (4th Cir. 2012) (reviewing erroneous honest-services wire fraud jury instruction for harmlessness). Inasmuch as the district court misinstructed the jury on only an element of the witness tampering offense, we conclude that the error does not fall within that narrow category of structural errors that are immune to harmless-error analysis.

Smith contends that even if we conduct a harmless-error analysis, we should apply the standard of review for direct appeals stated in Chapman v. California, 386 U.S. 18 (1967), and not the standard of review for collateral appeals set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). Under Chapman, an error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Neder, 527 U.S. at 18 (interpreting Chapman, 386 U.S. at 24). By contrast, under Brecht, "the standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623

11

(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Smith argues that the Chapman standard "is more appropriate in this case because the constitutional error was not revealed until after the appeal was perfected, and therefore there exists no need to defer to the decision below, as Brecht urges."

Although the Brecht standard clearly applies in § 2254 habeas cases, the Supreme Court has not directly addressed whether it applies in § 2255 cases. Nor have we addressed that question. See United States v. Owen, 407 F.3d 222, 229 (4th Cir. 2005) ("In the context of a section 2255 motion alleging constitutional error, such as Owen's, the Fourth Circuit has not decided whether the harmless-beyond-a-reasonable-doubt standard of Chapman applies, as it would on direct appeal, or whether the less stringent test of Brecht v. Abrahamson applies, as it would on review of a section 2254 petition" (internal citations omitted)). After a careful reading of both Brecht and Chapman, we now conclude that the standard set forth in Brecht applies to § 2255 cases.

In Brecht, the defendant challenged his state conviction pursuant to 28 U.S.C. § 2254 on the grounds that the State used his post-Miranda silence for impeachment. Brecht, 507 U.S. at 626. The Court rejected Chapman's beyond-a-reasonable-doubt standard, noting that the "substantial and injurious effect" standard is "better tailored to the nature and purpose of

12

collateral review . . . and application of a less onerous harmless-error standard on habeas promotes the considerations underlying our habeas jurisprudence." Id. at 623. The Court then identified several reasons for distinguishing between direct and collateral review, including: (1) structural differences between the two forms of review; (2) the "finality of convictions that have survived direct review within the state court system"; (3) "comity and federalism"; and (4) the notion that "liberal allowance of the writ . . . degrades the prominence of the trial itself." Id. at 633-35 (internal quotation marks omitted).

To be sure, Brecht is distinguishable from this case because in Brecht the state court system had evaluated the claimed error on direct appeal. A § 2255 case, on the other hand, originates in federal court and therefore does not implicate the comity and federalism factor that the Court considered in Brecht; there is no risk of "[f]ederal intrusions into state criminal trials" because state courts are not involved. Brecht, 507 U.S. at 635 (internal quotation marks omitted).

The other three factors identified in Brecht, however, are fully and directly applicable to collateral review under § 2255. First, the structural nature of collateral review is the same for both § 2254 and § 2255 cases -- in both, the court must

13

decide whether a defendant is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a); 28 U.S.C. § 2254(a). Second, society has the same interest in the finality of federal convictions as it does in state convictions. See United States v. Frady, 456 U.S. 152, 166 (1982) ("But the Federal Government, no less than the States, has an interest in the finality of its criminal judgments"). And finally, the risk of degradation of the writ is present in both federal § 2255 cases as in state-habeas § 2254 cases.

Moreover, the fact that the Fowler issue was not addressed by the district court in the first place and by the court of appeals on direct review under Chapman does not preclude the application of Brecht. The Supreme Court has applied the Brecht standard to a § 2254 case even when no lower court has conducted a Chapman review of the alleged error. See Penry v. Johnson, 532 U.S. 782, 791, 795 (2001) (applying Brecht's "substantial and injurious effect" test where the state court did not conduct a harmlessness review under Chapman because the state court determined that no constitutional error had occurred); see also Herrera v. Lemaster, 301 F.3d 1192, 1200 (10th Cir. 2002) ("Even though no party in Penry asserted that Brecht was an inappropriate standard, we are not inclined to disregard this clear signal from the Court that Brecht applies to an AEDPA case

14

even when no proper harmless error assessment occurred in state court").

We conclude, therefore, that the Brecht standard of review for harmlessness is better suited to § 2255 cases than is the Chapman standard applicable to direct appeals.

In applying Brecht to § 2255 cases, we join other courts of appeals that have done so. See, e.g., United States Dago, 441 F.3d 1238, 1246 (10th Cir. 2006) ("[W]e hold that the Brecht standard applies when conducting a harmless-error review of a § 2255 petitioner's claim that the jury in his or her trial was [improperly] instructed"); United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) (per curiam) (same); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) ("[A]pplication of the Brecht standard to [an instructional] error on collateral appeal is the appropriate approach"); Murr v. United States, 200 F.3d 895, 906 (6th Cir. 2000) (noting that "for purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict'"); see also Santana-Madera v. United States, 260 F.3d 133, 140 (2d Cir. 2001) (concluding that an instructional error was harmless under either the Brecht or the Chapman standard but noting that "[g]enerally, when evaluating presumptively correct convictions on collateral

15

habeas review, the harmless error inquiry for errors of a constitutional dimension is whether the error had substantial and injurious effect or influence in determining the jury's verdict" (internal quotation marks omitted)).  But see Lanier v. United States, 220 F.3d 833, 839 (7th Cir. 2000) (applying Chapman on § 2255 review).

In sum, we hold that Brecht's harmless-error review standard, applicable to § 2254 cases, is also applicable to § 2255 cases.  Accordingly, we review error for harmlessness in § 2255 cases for whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

### III

In arguing that the instructional error was not harmless, Smith observes that it is "impossible to say" whether he would have been convicted of witness tampering had the correct "reasonable likelihood" instruction been given.  But the issue is more refined.  We must determine whether the erroneous instruction had a substantial and injurious effect or influence on the jury's verdict, and to resolve this, we consider the effect or influence that the erroneous instruction had in light of the evidence presented.

Here, the jury was instructed that to prove the federal nexus of witness tampering, the government must prove that

16

"there was a <u>possibility or likelihood</u> that the information being provided by Ms. McAbier would be communicated to a [federal] law enforcement officer." <u>Fowler</u> rejected the use of the word "possibility" but approved the use of the word "likelihood." Because the district court used the words in the disjunctive, the jury was left to consider the "possibility" standard, which <u>Fowler</u> rejected.

Nonetheless, in approving the use of a "reasonable likelihood" standard, the <u>Fowler</u> Court constricted a dictionary definition of likelihood -- meaning a "probability," <u>Merriam-Webster's Collegiate Dictionary</u> 721 (11th ed. 2007) -- and stated explicitly that in using the word likelihood, it did <u>not</u> mean "more likely than not." <u>Fowler</u>, 131 S. Ct. at 2052. The Court's standard demands much less, requiring the government to show only that "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical," <u>id.</u>, a relatively low bar.

Properly understood, therefore, the "reasonable likelihood" standard in <u>Fowler</u> requires that the government establish the federal nexus by presenting evidence showing that a communication with a federal officer was more than a possibility but less than a probability, so long as the chance of the communication was not remote, outlandish, or simply hypothetical.

17

In applying this standard to the record in this case, we conclude that the instructional error did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. The evidence satisfying the "reasonable likelihood" standard was substantial. McAbier was complaining about large scale gang activity and drug trafficking in her neighborhood. To be sure, the presence of drug trafficking alone might not be enough to satisfy the "reasonable likelihood" standard, but the federal nature of drug trafficking, plus "additional appropriate evidence" does meet the standard. United States v. Bell, 113 F.3d 1345, 1349 (3d Cir. 1997) (noting that federal nexus in § 1512(a)(1) "may be inferred by the jury from the fact that the offense was federal in nature, plus additional appropriate evidence" (internal citation omitted)); see also United States v. Ramos-Cruz, 667 F.3d 487, 497 (4th Cir. 2012) (adopting the Third Circuit standard).

Here, the government did put forth "additional appropriate evidence" showing the reasonable likelihood that McAbier's reports would have been brought to the attention of federal law enforcement officers. DEA Special Agent Brisolari testified that the DEA field office's "biggest source of information" was the Baltimore City Police Department and that the DEA worked in close cooperation with the Baltimore City Police Department,

18

specifically mentioning its participation in six of nine task forces. Agent Brisolari also noted that even street level drug cases come to the attention of the DEA. This case also involved gang activity, elevating the profile of the drug trafficking.

In short, we conclude that the instructional error in this case was harmless as defined in <u>Brecht</u>. The district court's denial of Smith's § 2255 motion is accordingly

<u>AFFIRMED</u>.