**Jacob S. ADAMS, Jr., Appellant**

v.

**UNITED STATES of America.**

No. 11–2487.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 10, 2013.

Opinion filed: July 1, 2014.

Lawrence C. Hersh, Esq., Rutherford, NJ, for Appellant.

Mark E. Coyne, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

Before: McKEE, Chief Judge, FUENTES, and CHAGARES, Circuit Judges.

OPINION

CHAGARES, Circuit Judge.

Jacob Adams seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255. He claims that the introduction of certain DNA expert testimony linking him to a blue knitted hood used in several bank robberies violated his Sixth Amendment right to confrontation. For the reasons that follow, we will affirm the District Court's denial of the writ.

I.

Adams and co-defendant Carlton Ewell were convicted in November 2002 of robbing three banks in the Philadelphia area. At trial, the Government presented evidence that they, along with accomplice Edward Campbell, would arrive at each bank in a stolen vehicle and don masks and gloves. After threatening bank employees with firearms, they would fill bags with money and flee in a stolen car to a location where they would switch vehicles, leaving their masks and gloves behind.

The Government's case largely relied on the testimony of Campbell, who testified at trial pursuant to a cooperation agreement. Campbell implicated Adams and Ewell as having committed the robberies with him. His descriptions of the robberies were corroborated by video surveillance, and testimony from eyewitnesses and law enforcement. The Government also introduced recorded phone calls of Ewell to his girlfriend and Adams in which Ewell speculated that Campbell was cooperating. The parties stipulated that Adams was absent from work on each of the three days that the banks were robbed, although Adams argued that this was just a coincidence.

The Government also called FBI forensic DNA expert Thomas Callaghan. Callaghan testified that Adams's DNA matched a sample taken from a blue knit hood found after one of the robberies, affirmatively did not match a sample taken from three other items, and could not make any determination one way or another on a fifth item. Callaghan testified that he did not personally test any of the samples but that he supervised the tester and interpreted her results. The reports and tests relied upon by Callaghan in forming his conclusions were not introduced into evidence.

Although the reliability of Callaghan's tests and conclusions were heavily assailed on cross-examination, largely by Ewell's counsel, Adams did not deny that his DNA was on the blue knit hood, identified in the testimony as "Q–16." When Adams took the stand to testify in his own defense, he and his attorney, Brian McMonagle, engaged in the following colloquy:

McMONAGLE: Showing you what's been marked for identification as Q–16, Q–16, have you seen that before?

ADAMS: Yes.

McMONAGLE: All right, are you denying that you DNA is on that particular piece of clothing?

ADAMS: No.

Appendix 1010.

The jury convicted Adams of three counts of armed bank robbery in violation of 18 U.S.C. § 2113 and three counts of use of a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c). He was sentenced to 610 months of imprisonment. On July 10, 2006, this Court affirmed his conviction, in which he belatedly raised a confrontation clause challenge. *See United States v. Adams*, 189 Fed.Appx. 120 (3d Cir.2006). We held that Adams was not denied his right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354,

158 L.Ed.2d 177 (2004), because he was able to call the lab analysts who had performed the actual DNA testing if he had wanted to do so. *Adams,* 189 Fed.Appx. at 124. We remanded for resentencing in light of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which was decided between the time Adams was convicted and the time we heard his direct appeal. On remand, the district judge imposed the same 610–month sentence, which this Court affirmed. *See United States v. Ewell,* 320 Fed.Appx. 118 (3d Cir.2008). Adams did not seek a writ of certiorari, and his conviction became final on December 8, 2008.

Adams filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in December 2009, and an amended petition with the aid of counsel in September 2010. He argued that he was entitled to post-conviction relief because Callaghan's testimony violated his confrontation rights under *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and that this case should apply to him even though it was decided after his conviction became final. The District Court denied his petition, holding that *Melendez–Diaz* did not apply retroactively, and that even if it did, there was no error because the underlying testing and reports was not admitted into evidence. This Court issued a certificate of appealability limited to the question of whether Callaghan's testimony violated Adams's Sixth Amendment right to confrontation.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 2253. We exercise plenary review over the legal conclusions of the District Court, and review its factual findings for clear error. *United States v. Davies,* 394 F.3d 182, 188 (3d Cir.2005).

## III.

All of the Confrontation Clause cases upon which Adams relies, *Melendez–Diaz, Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), and *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), were decided after his conviction became final. In order to apply these cases to his conviction, we would have to hold that they apply retroactively pursuant to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Lloyd v. United States,* 407 F.3d 608, 611–12 (3d Cir.2005) (describing the *Teague* retroactivity analysis). If we were to hold that these cases applied retroactively, we then would have to assess whether what happened in Adams's trial constituted error under their precedents. Although the parties devoted much of their briefing to these issues, we conclude that we need not decide whether these cases apply retroactively, or if there was any error at all. Assuming that they do apply to Adams's petition, and assuming that there was a violation of Adams's right to confrontation, such error was clearly harmless, and would not entitle Adams to relief.

The Supreme Court has held that Confrontation Clause evidentiary violations are subject to harmless error review. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also Bullcoming,* 131 S.Ct. at 2719 n. 11; *United States v. Hinton,* 423 F.3d 355, 361–62 (3d Cir.2005). Such a constitutional error is harmless if the Government proves "beyond a reasonable doubt that the error … did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We must satisfy our-

selves that the "verdict actually rendered in this trial was surely unattributable to the error." *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 337 (3d Cir.2010).[1]

We have little trouble concluding that any confrontation error (again, assuming without deciding that there was one) was harmless. The relevance of Callaghan's testimony insofar as it pertained to Adams was only to link him to the single blue knit hood. Callaghan did not link Adams to any other piece of clothing (and affirmatively excluded Adams as the source of DNA for three out of the other four items). The link to the blue knit hood was corroborated by Adams's own testimony, in which he did not deny that it was his after explicitly being asked about it. Linking Adams to the hood was not an important part of the Government's proof because it did not establish that Adams had worn it inside the bank on the days that the banks were robbed. It simply established that at some point in time Adams had worn it, something that Adams did not contest. The admission of this essentially undisputed testimony could not have had any substantial or injurious effect on the jury's verdict as it pertained to Adams.

### IV.

For the forgoing reasons, we will affirm the District Court's denial of Adams's petition for a writ of habeas corpus.

---

1. The parties dispute which harmless error standard to apply. Adams advances the "harmless beyond a reasonable doubt" standard from *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This is the standard that we use to review constitutional errors of the trial type on direct review. *United States v. McLaughlin*, 386 F.3d 547, 552–53 (3d Cir.2004). The Government argues that we should employ the standard from *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), whereby an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." This is the standard that the Supreme Court instructs us to use when reviewing constitutional errors of the trial type in habeas claims brought by state prisoners under 28 U.S.C. § 2254. *Id.* Nearly every other Court of Appeals applies the *Brecht* standard to § 2255 petitions. *See United States v. Smith*, 723 F.3d 510, 517 (4th Cir.2013) (collecting cases). Although we regularly apply the *Brecht* standard in the § 2254 context (*see, e.g., Adamson v. Cathel*, 633 F.3d 248, 259–60 (3d Cir.2011), *Lewis v. Pinchak*, 348 F.3d 355, 359 (3d Cir.2003)), we have yet to consider which harmless error formulation governs constitutional errors of the trial type in habeas petitions brought by federal prisoners pursuant to § 2255. Because the error was harmless under either standard, we will assume that the more lenient standard applies for the purposes of this opinion.