**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-7089**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

MOHAMED ALI SAID, a/k/a Maxamad Cali Saciid,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (2:10-cr-00057-RAJ-DEM-1; 2:21-cv-00040-RAJ-DEM)

Argued: December 9, 2021                    Decided: February 23, 2022

Before KING and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Reversed in part and remanded with instructions by published opinion. Judge Wynn wrote the opinion, in which Judge King and Senior Judge Keenan joined.

**ARGUED:** Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant. Marisa Rayna Taney, DEBEVOISE & PLIMPTON LLP, New York, New York, for Appellee. **ON BRIEF:** Mark J. Lesko, Acting Assistant Attorney General, Jeffrey M. Smith, National Security Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Raj Parekh, Acting United States Attorney, Alexandria, Virginia, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant.

John Gleeson, Steven G. Tegrar, DEBEVOISE & PLIMPTON LLP, New York, New York, for Appellee.

WYNN, Circuit Judge:

The question on appeal is whether Petitioner Mohamed Ali Said's convictions on two counts of using and carrying a firearm during and in relation to a crime of violence may stand when some of the predicate convictions that the jury might have relied on in convicting him of the firearms charges have been invalidated. The district court answered no and vacated the two firearms convictions.

Under this Circuit's precedent, however, Said did not meet his burden of showing that the error in the jury instructions had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Accordingly, we reverse the district court's judgment in relevant part and remand with instructions to enter an order denying Said's § 2255 petition as to the two counts in question.[1]

I.

In April 2010, Said and six others—all Somali citizens—attacked the USS *Ashland* (LSD 48), a commissioned ship in the United States Navy with significant armament and a crew that typically includes a Marine Corps Detachment, in the Gulf of Aden.[2] For Said and several of his confederates, this was their second attempt on a vessel in as many months. In late February, they had entered the Gulf "searching for a merchant ship to

---

[1] The district court also granted relief as to a third count. Both parties agree that was proper. Our opinion does not disturb that relief.

[2] The facts stated herein are taken from our previous decision affirming Said's convictions on direct appeal and are recited in the light most favorable to the Government, as the prevailing party at trial. *See United States v. Said*, 798 F.3d 182, 186 n.2 (4th Cir. 2015) (citing *United States v. Singh*, 518 F.3d 236, 241 n.2 (4th Cir. 2008)).

seize," but were intercepted by the HMS *Chatham* of the British Royal Navy. *United States v. Said*, 798 F.3d 182, 186 (4th Cir. 2015).

Trying their luck again in April, Said and the others loaded "a small wooden skiff . . . with a hooked ladder, three AK–47s, and [a rocket-propelled grenade launcher]." *Id.* at 186–87. They approached the *Ashland*, believing it to be a merchant vessel. Said and one of his codefendants "held loaded AK–47s," and the codefendant used his weapon to shoot at the *Ashland*. *Id.* at 187. The *Ashland* returned fire, killing one of the attackers and apprehending the six survivors who were brought to Virginia for prosecution.[3] *Id.* at 188.

The operative indictment charged Said with ten counts:

- Conspiracy to commit hostage taking, 18 U.S.C. § 1203(a) (Count 1);
- Conspiracy to commit kidnapping, *id.* § 1201(a)(2), (c) (Count 2);
- Conspiracy to perform an act of violence against persons on a vessel, *id.* § 2291(a)(6), (9) (Count 3);
- Conspiracy to use and carry a firearm and a destructive device during and in relation to, and to possess a firearm and a destructive device in furtherance of, a crime of violence, *id.* § 924(o) (Count 4);
- Piracy, *id.* § 1651 (Count 5);
- Attack to plunder a vessel, *id.* § 1659 (Count 6);
- Assault with a dangerous weapon on a federal officer or employee, *id.* § 111(a)(1), (b) (Count 7);
- Performing an act of violence against persons on a vessel, *id.* § 2291(a)(6) (Count 8);
- Using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, *id.* § 924(c)(1)(A) (Count 9); and
- Using, carrying, and discharging a firearm during and in relation to a crime of violence, *id.* § 924(c)(1)(A)(iii) (Count 10).

---

[3] Said was tried alongside four of his codefendants. The fifth pleaded guilty shortly after their arrest. *Said*, 798 F.3d at 188–89.

4

The charges related to the encounter with the HMS *Chatham* in February 2010 and the attack on the USS *Ashland* in April 2010. Counts 1 through 4 encompassed the time periods for both; Count 9 related only to the *Chatham*; and the remaining charges related only to the *Ashland*. Further, Counts 5 through 10 included allegations of aiding and abetting. 18 U.S.C. § 2(a).

Counts 4, 9, and 10 relied on other crimes charged in the indictment as predicate "crime[s] of violence." J.A. 48, 53–54.[4] Specifically, the firearm offenses charged in Counts 4 and 10 of the indictment were predicated on seven alternative crimes of violence: the conspiracy counts charged in Counts 1 through 3, and other crimes charged in Counts 5 through 8. The firearm offense charged in Count 9 was predicated solely on the conspiracy offenses (Counts 1 through 3).

During trial in 2013, the district court provided the jury with a number of instructions that are relevant to this appeal. First, the court instructed the jury that, as to Counts 4 and 10, the Government had to prove beyond a reasonable doubt that Said "committed *any one or more* of the crimes charged in" Counts 1 through 3 and 5 through 8 of the indictment.[5] J.A. 198 (emphasis added); *see also* J.A. 183. The court also gave a "limiting instruction" as to Count 10, instructing that "Count Ten is to be considered only if you have found [Said] guilty of *at least one* of the crimes of violence charged in Counts

_____

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.
[5] In its instructions on Count 10, the district court erroneously listed Count 4 as a possible predicate. However, the court properly omitted Count 4 when listing the possible predicates in several other places in the instructions. Said has not argued that this error prejudiced him.

One, Two, Three, Five, Six, Seven, or Eight." J.A. 198–99 (emphasis added); *see also* J.A. 74 (Government counsel making the same point in closing). And the court noted that the Government was "required to prove beyond a reasonable doubt that [Said], or another who was aided and abetted by [him,] actively employed the firearms described in" Count 10. J.A. 201. Finally, the court instructed the jury that its "verdict must be unanimous." J.A. 206.

The jury convicted Said on all ten counts, and further unanimously found that "a firearm was discharged during" the crime charged in Count 10. J.A. 218. The verdict form did not require the jury to identify the predicate offenses upon which the convictions for Counts 4, 9, or 10 were based.

In November 2016, the district court sentenced Said to 396 months' imprisonment:[6] 120 months on Counts 1 through 8, all to be served concurrently; 96 months on Count 9, to be served consecutively; and 180 months on Count 10, also to be served consecutively. Said additionally received a total effective supervised release term of five years. Neither party appealed the sentence.

In January 2021, Said filed a habeas petition under 28 U.S.C. § 2255 seeking to vacate his convictions on Counts 4, 9, and 10 in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which he argued undermined the predicates

---

[6] This followed an original sentencing to an aggregate of 500 months in 2014. *Said*, 798 F.3d at 192. We vacated that sentence in 2015 upon the Government's appeal, in which the Government successfully argued that the statutorily required sentence of life in prison for the piracy count, Count 5, did not violate the Eighth Amendment. *Id.* at 200. On remand, however, the Government moved for a downward departure for reasons unrelated to this appeal.

necessary to sustain those convictions, and which we have held applies retroactively on collateral review,[7] *see In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021). Specifically, 18 U.S.C. § 924(c)—the relevant statute for Counts 4, 9, and 10—prohibits using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime" or possessing a firearm "in furtherance of any such crime."[8] 18 U.S.C. § 924(c)(1)(A). A "crime of violence" is defined by statute as "an offense that is a felony and" either (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or (B) "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3). In *United States v. Davis*, however, the Supreme Court held that the second definitional clause—(B), known as the "residual clause"—is unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. Thus, predicate crimes of violence must fall under clause (A), the "force clause," to be valid.

---

[7] Said originally filed his petition in June 2020, within one year of the Supreme Court's decision in *Davis*. In November 2020, the district court dismissed that petition without prejudice to refiling it within sixty days. Said refiled the petition within that time frame. Said's petition is not a second or successive petition under 28 U.S.C. § 2255(h) because the initial petition was dismissed without prejudice to cure technical deficiencies. *See, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 485–86 (2000); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643–45 (1998); *In re Goddard*, 170 F.3d 435, 438 (4th Cir. 1999). Nor did the Government appeal the sixty-day extension or otherwise argue that Said's petition was untimely. *See Miller v. United States*, 735 F.3d 141, 143 (4th Cir. 2013) (Government may waive statute-of-limitations defense under § 2255); Brian R. Means, *Federal Habeas Manual* § 9A:159 (2021) ("The statute of limitations is an affirmative defense that must be asserted by the government.").

[8] While Count 4 charged a violation of 18 U.S.C. § 924(o), that statute is simply the conspiracy form of § 924(c). *See* 18 U.S.C. § 924(o) (providing penalties for "[a] person who conspires to commit an offense under [§ 924(c)]").

Said's § 2255 motion contended that at least three predicates, Counts 1 through 3, were no longer valid after *Davis*, and that therefore the jury was incorrectly instructed that it could consider those charges as predicates for Counts 4, 9, and 10. He further argued that he was prejudiced by this error because there was a reasonable possibility that the jury relied *solely* on those invalid predicates in convicting him of Counts 4, 9, and 10. The district court agreed and granted the § 2255 motion; vacated Said's convictions on Counts 4, 9, and 10; and resentenced Said to 120 months' incarceration, a sentence he had already completed. *Said v. United States*, No. 2:10-CR-57-1, 2021 WL 3037412, at \*12 (E.D. Va. July 19, 2021). The Government timely appealed the vacatur of Said's convictions on Counts 4 and 10, while conceding that Count 9 was properly vacated because it was based only on the invalid predicates. We granted the Government's motion to stay the district court's judgment pending appeal.

II.

We begin with a review of the predicate convictions. The Government concedes that, after *Davis*, Counts 1 through 3—the conspiracy charges—may no longer serve as predicate crimes of violence because they do not categorically require "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (holding that conspiracy to commit Hobbs Act robbery "does not categorically qualify as a crime of violence under the elements-based categorical approach . . . because to convict a defendant of this offense, the Government must prove only that the defendant *agreed*

8

*with another* to commit actions that, *if realized*, would violate the Hobbs Act" (emphases added)).

Additionally, the parties and the district court agreed that, at minimum, Counts 7 and 8 remained valid predicate crimes of violence after *Davis*.[9] *Said*, 2021 WL 3037412, at *9. Because it is Said's burden to show error, and because the parties have not briefed the crime-of-violence question as to Counts 5 through 8, we assume for purposes of this analysis that they are all valid predicates.[10]

Thus, Said was charged with, and the jury found him guilty of, both valid and invalid predicates. Both parties agree with the district court that instructing the jury that *any* of these crimes could serve as predicates for the § 924(c) charges was error. *See id.* at *10. Nevertheless, a § 924(c) conviction may stand even if the jury based its verdict on an

---

[9] Although Counts 5 through 8 included allegations of aiding and abetting under 18 U.S.C. § 2(a), we have held that "aiding and abetting a crime of violence is also categorically a crime of violence." *United States v. Ali*, 991 F.3d 561, 574 (4th Cir.), *cert. denied*, 142 S. Ct. 486 (2021). To the extent those counts charged crimes of violence, therefore, it is of no moment whether the jury believed Said to have committed them as a principal or as an aider and abettor.

[10] We note that we have suggested, in an unpublished opinion, that the crime charged in Count 7, § 111(b), may be a proper predicate offense for a § 924(c) conviction. *See United States v. Lewis*, 724 F. App'x 269, 270 n.* (4th Cir. 2018) (per curiam) (finding no plain error where § 111(b) was used as a predicate offense for a § 924(c) conviction). Our sister circuits agree that it is. *See United States v. Bryant*, 949 F.3d 168, 181 n.12 (4th Cir. 2020) (noting this agreement); *see also United States v. Taylor*, 848 F.3d 476, 492–93 (1st Cir. 2017); *Gray v. United States*, 980 F.3d 264, 268 (2d Cir. 2020) (per curiam); *United States v. Bullock*, 970 F.3d 210, 213 (3d Cir. 2020) (evaluating Sentencing Guidelines § 4B1.1); *United States v. Hernandez-Hernandez*, 817 F.3d 207, 217 (5th Cir. 2016) (evaluating Sentencing Guidelines § 2L1.2); *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016); *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009) (evaluating 18 U.S.C. § 16); *United States v. Kendall*, 876 F.3d 1264, 1269–70 (10th Cir. 2017); *United States v. Bates*, 960 F.3d 1278, 1285 (11th Cir. 2020); *United States v. Quaglin*, 851 F. App'x 218, 218–19 (D.C. Cir. 2021) (per curiam).

invalid predicate, so long as the jury *also* relied on a valid predicate. *United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016); *see United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021) (reaffirming *Hare* after *Davis*), *cert. denied*, 142 S. Ct. 819 (2022). But here, the verdict form did not specify which predicate or predicates the jury relied upon in finding Said guilty of Counts 4 and 10.

So, we are left with the question of whether Said is entitled to habeas relief because the jury *may* have relied *solely* on one or more of the invalid predicates in rendering guilty verdicts on Counts 4 and 10. We conclude that the answer is no.

III.

In evaluating this issue, we must first determine our standard of review. "In our consideration of the district court's rulings [on a § 2255 petition], we review its legal conclusions de novo and its findings of fact for clear error." *United States v. Roane*, 378 F.3d 382, 395 (4th Cir. 2004). But how do we evaluate the impact of an instructional error on a conviction? The answer depends on whether a defendant preserved the objection (by raising it before the district court) as well as what stage the case is in (direct appeal or collateral attack).

On direct appeal regarding a preserved, meritorious objection to jury instructions, the defendant is entitled to relief unless the error is harmless beyond a reasonable doubt. *Smith*, 723 F.3d at 512 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see id.* at 515 ("Under *Chapman*, an error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999))).

10

Where a defendant, like Said, fails to preserve his objection, our review on direct appeal is for plain error.[11] On plain-error review, "the defendant rather than the Government bears the burden of proof." *United States v. Hastings*, 134 F.3d 235, 243 (4th Cir. 1998). The defendant must show that the court's jury instructions included an error that was "clear and obvious," and "that the error affected his substantial rights, meaning that it '*affected the outcome of the district court proceedings*.'"[12] *United States v. Ali*, 991 F.3d 561, 572 (4th Cir.) (emphasis added) (quoting *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014)), *cert. denied*, 142 S. Ct. 486 (2021).

An even *more* stringent standard applies in a § 2255 case like the one at bar. On federal habeas review of an instructional error, we apply the "harmless-error standard . . . articulated in *Brecht v. Abrahamson*," in which the Supreme Court held that an "error is harmless if it did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Smith*, 723 F.3d at 512 (quoting *Brecht*, 507 U.S. at 623); *see id.* at 516 (applying *Brecht* to a § 2255 case); *see also Hedgpeth v. Pulido*, 555 U.S.

---

[11] The Government argued below that Said procedurally defaulted his *Davis* challenge by not raising it before his convictions became final, and that he could not establish either cause or prejudice for the default. But the Government has not pursued that argument on appeal, except insofar as it argues Said was not prejudiced because the errors as to Counts 4 and 10 were harmless. We therefore do not address the question of procedural default. *See United States v. Harris*, 991 F.3d 552, 558 (4th Cir.) (procedural default is an affirmative defense), *cert. denied*, 142 S. Ct. 379 (2021); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (party waives argument by failing to raise it in its opening brief).

[12] Further, even if these elements are established, "we do not correct the error unless it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Ali*, 991 F.3d at 572 (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)).

57, 58 (2008) (per curiam) (applying *Brecht* in a case where, like this one, "the jury was instructed on alternative theories of guilt and may have relied on an invalid one"). This standard requires the habeas petitioner to show that "[t]here [is] more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quoting *Brecht*, 507 U.S. at 637). Thus, "mere speculation that the defendant was prejudiced by trial error" is not enough; "the court must find that the defendant was actually prejudiced by the error." *Id.* (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)).

Applying this standard, we first evaluate the district court's conclusion that Said has shown prejudicial error because it is impossible to know from the record which predicate or predicates the jury had in mind when it convicted him of Counts 4 and 10. We then turn to Said's assertion that he can show prejudicial error because we do not know whether the jury was unanimous in its decision as to which predicate or predicates applied. We reject both contentions.[13]

## A.

The district court concluded that Said could show "substantial and injurious effect" from the instructional error "because there is more than a 'reasonable probability that the

---

[13] We also note that the district court purported to apply the modified categorical approach to determine which of the "seven alternative potential predicates for Counts Four and Ten . . . were vital for [Said]'s convictions." *Said*, 2021 WL 3037412, at \*6. As we explained in *Ali*, "[t]his [analysis] fundamentally misunderstands what the categorical approach accomplishes and the nature of our inquiry" in this case. *Ali*, 991 F.3d at 574. "The purpose of the categorical (and modified categorical) approach is not to determine what the predicate was—a factual question—but rather whether a particular predicate meets the requirements of a 'crime of violence'—a purely legal question" not presently before us. *Id.*

jury would not have convicted [Said] of the § 924 offenses if the invalid [crime-of-violence] predicate [was] not included on the verdict form.'" *Said*, 2021 WL 3037412, at *11 (quoting *United States v. Jones*, 935 F.3d 266, 274 (5th Cir. 2019) (per curiam)). The court indicated that it held "grave doubt" that Said would have been convicted on Counts 4 and 10 "but for the improper jury instructions" because "there is no evidence in the record showing that the jury relied on either an invalid or valid predicate offense to convict" him of those counts. *Id.* at *11 & n.5; *see id.* at *12 (noting that this "grave doubt" arose because the record was "unclear" regarding which predicate or predicates the jury relied upon).

That is not enough. As we have repeatedly held, even under the plain-error standard, "the defendant bears the burden of showing 'that the erroneous instruction given resulted in his conviction, *not merely that it was impossible to tell under which prong the jury convicted*.'" *Ali*, 991 F.3d at 575 (emphasis added) (internal quotation marks omitted) (quoting *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010)); *see also Hastings*, 134 F.3d at 243–44 (same). That is, "ambiguity is insufficient" to "establish[] actual prejudice" even under plain-error review. *Ali*, 991 F.3d at 575. Instead, the defendant "must show not only that he *could* have been convicted under the erroneous . . . instruction, but also that he *was not* convicted under the" proper instruction. *Robinson*, 627 F.3d at 955.

Accordingly, mere "uncertainty as to which . . . [predicate or predicates] the jury [relied on] when it found [the defendant] guilty of the § 924(c) counts" does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for

habeas relief.[14] *Ali*, 991 F.3d at 575; *see Davis*, 576 U.S. at 268 (under *Brecht*, "mere speculation" is insufficient). Rather, to meet his burden, Said must show "more than a reasonable possibility" that the jury *only* found him guilty on Counts 4 and 10 because it improperly considered Counts 1 through 3 to be crimes of violence. *Davis*, 576 U.S. at 268 (internal quotation marks omitted).

This he cannot do. Certainly, the record does not indicate which predicates the jury relied on. But, at the risk of repetition, that sort of ambiguity is not enough. Further, common sense supports that a jury that found Said guilty of several substantive crimes of violence, the evidence for all of which showed to involve the use of firearms in an attack against the *Ashland*, had at least one of those crimes in mind when they convicted him of using, carrying, and discharging a weapon (or aiding and abetting the same) during and in relation to a crime of violence that occurred during the time period covering the attack on the *Ashland*.[15]

---

[14] Said directs our attention to cases from other circuits that have found plain error in similar circumstances. *See, e.g.*, *United States v. Capers*, 20 F.4th 105, 123 (2d Cir. 2021); *Jones*, 935 F.3d at 274 (5th Cir.). But, of course, we are bound by our own precedent. And, in any event, this is not a plain-error case; the standard we must apply here is even more difficult for Said to satisfy.

[15] Thus, though the fact that Said can point to nothing more than ambiguity is enough to resolve this case, we note that the facts here strengthen this conclusion even more. The jury found Said guilty of, among other things, assault with a dangerous weapon on a federal officer or employee (Count 7). They convicted him of conspiring to use and carry a firearm and a destructive device during and in relation to, and to possess a firearm and a destructive device in furtherance of, a crime of violence (Count 4). And they found him guilty of discharging a firearm (or aiding and abetting a codefendant who discharged a firearm) during and in relation to a crime of violence (Count 10). All of those charges covered the time period that included the attack on the *Ashland*, and the evidence in the case established that the only weapon discharged in either the encounter with the *Chatham* or the attack on

Said argues that the Government pointed to the conspiracy predicates in its closing argument, which arguably increases the likelihood that the jury relied on those invalid predicates. But that does nothing to show that the jury reached the commonsense-defying conclusion of relying *only* on those predicates, especially given that the Government also reinforced to the jury that it could rely on the valid predicates. So we do not think Said can show that there is *more than a reasonable possibility* that the jury convicted him of Counts 4 and 10 based solely on Counts 1, 2, and/or 3. Put another way, neither Said nor the district court has pointed to any reason why the jury would not have convicted him on Counts 4 and 10 based on at least one of the valid predicates—let alone any evidence that they did not do so. *See Robinson*, 627 F.3d at 955.

In analyzing these issues, our decision in *Ali* is instructive. In that case, the defendant was convicted, in relevant part, of four counts of Hobbs Act robbery and four counts of carrying a firearm in connection with a crime of violence. *Ali*, 991 F.3d at 564.

---

the *Ashland* was the AK–47 that Said's codefendant fired at the *Ashland*. We struggle to see how the jury could have convicted Said both of (1) assaulting individuals on the *Ashland* with a dangerous weapon and (2) discharging a firearm toward the *Ashland* during and in relation to a crime of violence, without finding that the firearm was discharged during and in relation to said assault. *Cf. Reyes v. United States*, 998 F.3d 753, 759 (7th Cir. 2021) ("[The defendant] was convicted of conspiracy, robbery, and brandishing. The trial evidence showed that he provided the gun and that it was in fact brandished during the robbery. No rational juror could have concluded that the gun was brandished in furtherance of only the conspirators' agreement to commit a robbery, but not in furtherance of the robbery itself, during which the gun was actually brandished."). And while Count 4 is more complicated because it charged *conspiracy* to use and carry a firearm during a crime of violence and covered the encounters with both the *Chatham* and the *Ashland*, we do not think it plausible that the jury could have convicted Said of conspiracy to use and carry a firearm *only* during and in relation to *other conspiracy* charges, and *not* during and in relation to the actual substantive crimes of violence for which the jury also convicted Said.

Each robbery charge and corresponding firearms charge pertained to one of four separate robberies that took place over the course of roughly three weeks. *Id.* at 564–65; *see* Joint Appendix at 40–47, *Ali*, 991 F.3d 561 (No. 15-4433) [hereinafter *Ali* Joint Appendix]. As to the robberies, the court instructed the jury that they could find the defendant guilty by way of *either* aiding and abetting liability *or* conspiracy liability (or both). *Ali*, 991 F.3d at 572. And the court instructed that a conviction under either theory would suffice for § 924(c) liability. *Id.* The jury found the defendant guilty on all charges. The verdict form did not require the jury to specify the theory of guilt for either the robbery charges or the § 924(c) charges. *Ali* Joint Appendix at 796–98.

On appeal, we found that these instructions were in error and that the error was plain, because while a conviction for aiding and abetting Hobbs Act robbery was a proper § 924(c) predicate, a conviction for *conspiracy* to commit Hobbs Act robbery was not. *Ali*, 991 F.3d at 572–73. But we rejected the defendant's contention that this error "affected [the defendant's] substantial rights, meaning that it 'affected the outcome of the district court proceedings.'" *Id.* at 572 (quoting *Catone*, 769 F.3d at 871). We concluded (1) that "a showing of uncertainty as to 'whether the verdict returned by the jury rested solely on the mis-instruction' does not meet the defendant's burden of establishing actual prejudice" and (2) that the Government presented evidence of "overwhelming weight" that the defendant actually aided and abetted the robberies, rather than merely conspiring to commit them. *Id.* at 575 (quoting *Hastings*, 134 F.3d at 243); *see id.* at 576. Here, too, Said pointed only to "uncertainty" regarding which predicate or predicates the jury relied on.

Moreover, in this case, we have no occasion to reach the weight of the evidence because the jury *actually convicted* Said of all the possible predicate theories. Put differently, *Ali* involved two levels of ambiguity, but this case involves only one. In *Ali*, it was unclear from the verdict form (1) whether the jury found the defendant guilty of Hobbs Act robbery on the basis of conspiracy, aiding-and-abetting liability, or both, and (2) whether the jury found the defendant guilty of the § 924(c) charges on the basis of a predicate robbery conspiracy, robbery by aiding or abetting, or both. We determined that the overwhelming weight of the evidence showed that the defendant "did more than simply conspire to commit robberies but that he assisted their commission." *Id.* at 576. And we rejected the defendant's instructional-error argument on that basis. We did not then question whether the jury's *§ 924(c)* conviction could have nevertheless been based on mere conspiracy, on the supposition that the jury could have found the defendant guilty of robbery on *both* conspiracy and aiding-and-abetting grounds, and then based the § 924(c) conviction solely on conspiracy.

But that is what Said asks of us here. In this case, we have no ambiguity about the substantive crimes the jury convicted Said of (the first form of ambiguity in *Ali*): the jury found Said guilty of every charge, and he has not pointed to ways in which those individual charges could be split into valid and invalid predicates. Rather, he asks us to hold that the instructional error had a "substantial and injurious effect" on his conviction because the jury did not specify on which predicate or predicates its § 924(c) conclusions were based (the second form of ambiguity in *Ali*). For the reasons discussed above, we reject that argument.

To be clear, we do not hold that a challenge such as Said's will *never* succeed when the defendant has been convicted of both a § 924(c) charge and a valid crime-of-violence predicate. Such a broad question is not before us, and another case with a different set of facts may well come out differently, as the Government agreed at oral argument. *See* Oral Arg. at 40:10–43:15, https://www.ca4.uscourts.gov/OAarchive/mp3/21-7089-20211209.mp3; *see also Ali*, 991 F.3d at 575 (noting that the analysis required in this type of case is a "'case-specific and fact-intensive' determination" (quoting *Robinson*, 627 F.3d at 956)). But here, Said has pointed to nothing to eliminate the commonsense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges in Counts 4 and 10.

B.

Said further contends that this case involves a second, separate error that was not present in *Ali*: the issue of juror unanimity.[16] The district court agreed. *Said*, 2021 WL 3037412, at *10 ("[T]he Court recognizes that the lack of special instructions also runs afoul of the long-established right of jury unanimity enshrined in the Sixth Amendment . . . because it is unclear which predicate offenses the jurors relied on to convict [Said] on Counts Four and Ten."). We conclude that, even assuming legal error exists, Said's argument still rests on ambiguity, which is not sufficient for the reasons described above.

---

[16] The Government has not argued that Said procedurally defaulted this claim by failing to raise it before his convictions became final or on direct appeal, or that it is untimely.

Said argues that he is entitled to relief because, while the jurors were told their "verdict must be unanimous," they were not instructed that they must unanimously agree *on the specific predicate or predicates* upon which they based their guilty verdicts for Counts 4 and 10. J.A. 206. He contends that such an instruction was required by *Richardson v. United States*, a continuing-criminal-enterprise case in which the Supreme Court held that the jury must reach unanimous agreement not only as to the fact "that the defendant committed some 'continuing series of violations' but also . . . in respect to each individual violation." *Richardson v. United States*, 526 U.S. 813, 815–16 (1999). For that reason, Said claims, the question before us is whether even a *single juror* based their verdicts for Counts 4 and 10 solely on one or more of the three improper predicates. And, in his view, that issue distinguishes this case from *Ali*, because he says the *Ali* court appropriately required unanimity. He also points out that *Ali* involved only one valid and one invalid predicate, whereas this case involves a total of seven predicates. Thus, he argues, this case presents "exponentially more combinations of how the jury could have properly or improperly convicted Said" than *Ali* did. Response Br. at 13.

Even assuming, arguendo, that (1) the district court's instructions constituted a *Richardson* error and (2) *Ali* did not involve such an error, Said's argument is meritless. We rejected a similar argument in *United States v. Myers*, in which the defendant argued "that the district court committed reversible error by failing to specifically instruct the jury that it must unanimously agree upon which of four drug transactions in evidence satisfied the distribution element necessary for a conviction on the . . . charge of drug trafficking and on the . . . charge of possession and use of a firearm in furtherance of drug trafficking."

19

*United States v. Myers*, 280 F.3d 407, 414 (4th Cir. 2002). Reviewing for plain error, we assumed without deciding that *Richardson* could extend to § 924(c) but concluded that the defendant could not show "that the failure to give the instruction *resulted in* his conviction." *Id.* (emphasis added). We held that, "[g]iven the overwhelming evidence of drug distribution . . . , especially with respect to the transaction between [the defendant] and [a specific individual], the likelihood that the jury was confused or less than unanimous on all of the four transactions in evidence is exceedingly remote. Indeed, it strains credulity to conclude that, in finding [the defendant] guilty, the jury may not have been unanimous in concluding that he had distributed crack to [the specified individual]." *Id.* at 415.

So too here. The idea that even a single juror relied solely on the conspiracy charges, rather than the other violent crimes *of which the jury unanimously found Said guilty*, in convicting him of the § 924(c) charges in Counts 4 and 10, simply strains credulity for the reasons given above.[17] *See supra* at 14–15 & n.15. Said's assertion that such a counterintuitive vote was *possible* cannot satisfy his steep burden on habeas review.[18]

---

[17] We do not understand Said to be pressing a claim that there is a *Richardson* error even if all of the jurors *did* rely on at least one valid predicate (i.e., because we cannot know whether they all relied on the *same* valid predicate or predicates). To the extent he makes such an argument, we decline to address it as beyond the scope of his *Davis*-based § 2255 petition.

[18] We are not persuaded by Said's contention that rejecting his habeas claim would "create a deeply problematic loophole in the constitutional guarantee of unanimity in jury verdicts." Response Br. at 17. Any such "loophole" can be closed by a defendant objecting to the instructions and requesting unanimity instructions pursuant to *Richardson*, as Said could have done but failed to do here. Should the court reject the proposed instructions, such a defendant could then raise that preserved issue on direct appeal, subject to a much less stringent standard than the one we must apply in this case.

*Fowler v. Joyner*, 753 F.3d 446, 459 (4th Cir. 2014) (noting that on federal habeas review of constitutional errors, "we apply the more onerous[] harmless error analysis set forth in *Brecht*").

IV.

For the foregoing reasons, Said is not entitled to habeas relief on Counts 4 and 10. Accordingly, we reverse the district court's judgment ordering such relief and remand with instructions to deny Said's habeas petition as to Counts 4 and 10. Because we leave undisturbed the court's grant of habeas relief as to Count 9, however, we leave it to the district court to consider in the first instance whether to resentence Said on any other count under the sentencing-package doctrine, now that we have reinstated Counts 4 and 10.[19]

---

[19] *See United States v. Chaney*, 911 F.3d 222, 226 (4th Cir. 2018) ("[T]he 'sentence-package theory,' . . . we have recognized, provides that in appropriate circumstances resentencing on all counts is a proper remedy under § 2255 for a single unlawful conviction."); *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997) (holding that § 2255(b) "confers a 'broad and flexible' power to the district courts 'to fashion an appropriate remedy'" (quoting *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992))); *United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997) (holding that since the term "sentence" in § 2255 "must be viewed in the aggregate," a district court has jurisdiction to conduct a resentencing on all surviving counts in a multi-count indictment when only one of the counts has been successfully challenged in a collateral proceeding); *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) (noting, in a direct appeal, that "[w]e agree with our sister circuits that 'when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan,' and that if some counts are vacated, 'the judge should be free to review the efficacy of what remains in light of the original plan'" (quoting *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999))); *cf. United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007) (affirming the district court's decision, in a § 2255 case, *not* to conduct a full resentencing where the district court struck a sentence on one count and "reenter[ed] the remaining sentence," thus "indicat[ing] that it was satisfied with the resulting sentence" (emphasis omitted)).

*REVERSED IN PART AND REMANDED WITH INSTRUCTIONS*