**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DION THOMAS,
*Defendant-Appellant.*

No. 01-4322

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

RUHULLAH AS-SADIQ,
*Defendant-Appellee.*

No. 01-4328

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RUHULLAH AS-SADIQ,
*Defendant-Appellant.*

No. 01-4467

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(CR-00-176-F)

Argued: September 24, 2002

Decided: January 22, 2003

Before MICHAEL, Circuit Judge, HAMILTON, Senior Circuit Judge, and Claude M. HILTON, Chief United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Chief Judge Hilton wrote the opinion, in which Judge Michael and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Gregory John Ramage, Raleigh, North Carolina; George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellants. Thomas B. Murphy, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Jane E. Pearce, Research and Writing Attorney, Raleigh, North Carolina, for Appellants. John Stuart Bruce, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

HILTON, Chief District Judge:

This matter comes before the Court on appeal by Appellants Ruhullah As-Sadiq and Dion Thomas challenging their convictions, as well as on cross-appeal by the government challenging the district court's decision to partially grant As-Sadiq's motion for judgment of acquittal.

On July 10, 2000, As-Sadiq and Thomas went to the College Heights Credit Union in Fayetteville, North Carolina. As-Sadiq was

both a customer and frequent visitor to the credit union. As-Sadiq introduced Thomas to the tellers as his cousin. The two men were at the credit union for fifteen to twenty minutes.

As-Sadiq asked the tellers when the slow times occurred during the day and whether any men worked there. During this visit, As-Sadiq went down the hallway toward the room where the surveillance equipment was kept; when he returned he asked whether the single camera was the only piece of surveillance equipment. After this visit, a teller became nervous and reported to her supervisor that she believed the men were casing the credit union.

The next day, As-Sadiq parked a getaway car across the street and entered the credit union with his girlfriend Queenetta Galbreath and their infant son. For ten to fifteen minutes, As-Sadiq stayed in the credit union lobby talking with the tellers, passing the baby to the tellers, and eventually deposited $25.00 into an account. The baby then needed to be changed, and As-Sadiq changed the baby in the credit union lobby; afterwards both As-Sadiq and Galbreath sat in the lobby chairs.

Two armed men entered the credit union, yelling for everyone to get down and asking where the safe was located. Both men's faces were painted black and one wore a yellow scarf over his face and carried a sawed-off shotgun. The tellers also testified that the other man had a gun shoved in his pants. The robbers were later identified as Dion Thomas and Marcus Jackson (a.k.a. "Safiq"). The two robbers jumped over the teller line, grabbed the manager from the floor, and ordered her to go down the line and empty the teller drawers into a plastic bag. During the robbery, the robbers did not speak to As-Sadiq or Galbreath.

After the robbers left, As-Sadiq said to the tellers "I bet you've never been through nothing like that before." J.A. 118. He also remarked that this was his child's first robbery. Throughout, As-Sadiq was very calm. The doors were locked and As-Sadiq and Galbreath waited for the police to arrive. When the police arrived, As-Sadiq claimed he was unable to describe the robbers. When told that Galbreath had identified the robbers as Thomas and Jackson, As-Sadiq denied knowing them. Galbreath stated that both Thomas and Jackson

were guests at As-Sadiq's home and had been present the morning of the robbery.

After the credit union was locked up, Thomas returned to the credit union and asked for As-Sadiq. Two tellers recognized him as one of the robbers. After being told that the credit union was closed, Thomas left and drove to As-Sadiq's house. He and Jackson packed a car rented under As-Sadiq's name and left for New York City. The police subsequently searched As-Sadiq's home and found a shotgun in a garbage can outside similar to the one used in the robbery. The police also found face paint similar to that worn by the robbers.

On September 19, 2000, As-Sadiq, Thomas and Jackson were named in a two-count indictment. Count One charged them with armed robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and aiding and abetting the same. Count Two charged them with brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and aiding and abetting the same. Because Jackson was a fugitive at the time of the indictment, the case proceeded with As-Sadiq and Thomas as the only two defendants. Both men pled not guilty to these charges on January 22, 2001, and their cases were tried before a jury beginning on February 8, 2001.

At the close of the government's case, both As-Sadiq and Thomas made motions pursuant to Federal Rule of Criminal Procedure 29 for judgments of acquittal. The district court denied Thomas' motion and As-Sadiq's motion, but reserved the right to revisit As-Sadiq's motion after the jury reached its verdict.

The court then held a conference and finalized the instructions it would give the jury after closing arguments. Neither the defendants nor the government had any objections to the court's proposed instructions. The parties presented their closing arguments. As-Sadiq's counsel subsequently requested that the jury be instructed (1) to first find whether As-Sadiq had the specific intent and knowledge that a firearm would be used during the robbery and (2) as to a lesser included offense of unarmed bank robbery. The court found that it was too late to incorporate these instructions into the charge because closing arguments were already made. The court gave As-Sadiq the

option to either move for a mistrial or continue with the trial; As-Sadiq chose to continue.

The court charged the jury and did not give As-Sadiq's proposed instruction. At the conclusion of the charge, As-Sadiq objected to the district court's failure to instruct on these matters. The jury convicted As-Sadiq and Thomas of both counts. As-Sadiq and Thomas filed post-verdict motions for judgment of acquittal under Rule 29, challenging the sufficiency of the evidence. The government filed a motion in opposition. On April 13, 2001, the district court partially granted As-Sadiq's motion and set aside his § 924(c) conviction.

On April 16, 2001, the district court sentenced Thomas to a term of 262 months on Count One and 84 months on Count Two to be served consecutively for a total term of 346 months in prison followed by a five-year term of supervised release. Thomas filed a notice of appeal on April 24, 2001. On April 30, 2001, the government appealed the district court's dismissal of As-Sadiq's § 924(c) conviction. On June 13, 2001, As-Sadiq was sentenced on the remaining armed bank robbery conviction to 300 months in prison to be followed by a five-year term of supervised release. On June 18, 2001, As-Sadiq filed a timely notice of appeal.

The issues before this court are as follows: (1) was there sufficient evidence to convict As-Sadiq of aiding and abetting armed bank robbery; (2) did the district court err in refusing to give As-Sadiq's proposed jury instructions; (3) did Thomas receive effective assistance of counsel; (4) was there sufficient evidence to convict Thomas of both armed bank robbery and brandishing a firearm; and (5) did the district court err by granting As-Sadiq's motion for judgment of acquittal as to Count Two. For reasons stated below, we affirm.

## I.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Moreover, the government is entitled to the benefits of all reasonable inferences that

can be drawn from the facts proven. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Reversal for insufficient evidence is reserved for the case "where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

As-Sadiq was charged in Count One of the indictment with aiding and abetting armed bank robbery under 18 U.S.C. §§ 2113(a) and (d), which state, in pertinent part:

> Whoever, by force and violence, or by intimidation, takes, . . . from the person or presence of another, . . . money . . . belonging to, or in the . . . possession of, any bank, . . . shall be . . . imprisoned . . . .

18 U.S.C. § 2113(a).

> Whoever, in committing, . . . any offense defined in subsection[ ] (a) . . . assaults any person, . . . by the use of a dangerous weapon . . . shall be . . . imprisoned. . . .

18 U.S.C. § 2113(d).

To support As-Sadiq's conviction as an aider and abetter, the government must prove that he:

> knowingly associated himself with and participated in the criminal venture. In order to prove association, the Government must establish that the defendant participated in the principal's criminal intent and the unlawfulness of his activity . . . . Participation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about that result.

*United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (internal quotations and citations omitted), *cert. denied*, 519 U.S. 1151 (1997).

As-Sadiq contends that the government failed to prove that he knew his confederates intended to use firearms to rob the credit union.

However, the evidence produced at trial is to the contrary. To prove As-Sadiq aided and abetted armed bank robbery, the government was required to show that As-Sadiq "'was on notice of the likelihood that a gun or other dangerous weapon would be used in the robbery.'" *United States v. McCaskill*, 676 F.2d 995, 998 (4th Cir.), *cert. denied*, 459 U.S. 1018 (1982) (quoting *United States v. Sanborn*, 563 F.2d 488, 491 (1st Cir. 1977)); *see also United States v. Spinney*, 65 F.3d 231, 236-37 (1st Cir. 1995) (determining that substantial likelihood is equivalent to constructive knowledge and thus a defendant who is substantially involved in planning and orchestrating a robbery is likely on notice that one or more guns will be used).

In this case, As-Sadiq engaged in active planning to commit the robbery. As-Sadiq also provided a headquarters at his house for the armed robbers, gave the armed robbers two different getaway cars, and acted as a diversion prior to and throughout the robbery. As-Sadiq's extensive involvement in the planning and perpetration of the robbery leads to the logical inference that he was aware guns would be used to commit the crime.

Additionally, As-Sadiq's conviction can also be affirmed because he had actual knowledge of the use of the firearms during the robbery and before the escape phase of the robbery. As-Sadiq did nothing to prevent the robbery from proceeding and willfully aided his co-defendants' escape. "[O]ne who assists in the escape phase of a bank robbery is an aider and abetter of that robbery." *United States v. James*, 998 F.2d 74, 80 (2d Cir.), *cert. denied*, 510 U.S. 958 (1993) (citing *McCaskill*, 676 F.2d at 1000).

As-Sadiq was present during the bank robbery, and he acknowledged that he saw a gun brandished. Despite his relationship with the bank robbers, As-Sadiq told investigators that he could not describe them and later denied even knowing them. Through this conduct, As-Sadiq actively and knowingly assisted his co-defendants in the escape phase of the robbery. As-Sadiq's refusal to aid the police permitted both Thomas and Jackson to escape to New York in a getaway car rented under As-Sadiq's name. Because the evidence proven at trial was sufficient to find that As-Sadiq had constructive knowledge guns would be used, as well as actual knowledge that guns were used during the commission of the robbery and Thomas and Jackson's subse-

quent escape, his conviction for aiding and abetting armed bank robbery is affirmed.

II.

As-Sadiq claims that the district court's jury instructions were deficient because (1) the district court failed to instruct the jury that in order to convict him of aiding and abetting armed bank robbery, it must find beyond a reasonable doubt that he knew his co-defendants were going to use firearms and that he intended to aid them in this behavior and (2) the district court refused to instruct the jury on the lesser included offense of unarmed bank robbery.

Jury instructions are reviewed in their entirety as part of the whole trial; the inquiry is "whether the court adequately instructed the jury on the elements of the offense and the accused's defenses." *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995), *cert. denied*, 516 U.S. 1121 (1996) (internal citation omitted). The decision to give or not give a jury instruction and the content of that instruction are reviewed for abuse of discretion. *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992), *cert. denied*, 506 U.S. 1066 (1993). Refusal to grant a requested instruction only constitutes reversible error if (1) the instruction was correct; (2) the requested instruction was not substantially covered by the court's charge to the jury; and (3) failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. *United States v. Patterson*, 150 F.3d 382, 388 (4th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999).

The contents of the requested jury instruction sought by As-Sadiq were substantially covered by the instructions given to the jury. The district court adequately instructed the jurors on the important requirement of finding every element of the offense charged beyond a reasonable doubt. The court instructed the jurors that they could consider both direct and circumstantial evidence, as well as draw reasonable inferences from the testimony. The district court defined "knowingly" and "willfully," and gave the elements of both the specific charges and instructions concerning aiding and abetting.

The district court instructed that the government must prove As-Sadiq "knew that a crime charged in the indictment was to be com-

mitted or was being committed and knowingly did some act for the purpose of aiding, commanding, and encouraging the commission of that crime, and acted with the intention of causing a crime charged in the indictment to be committed . . . ." J.A. 594-95. Finally, the district court instructed the jury to find whether As-Sadiq "knowingly associated himself with the crime charged in some way as a participant, that is someone who wanted the crime to be committed and not as a mere spectator." J.A. 595. These instructions adequately informed the jury that As-Sadiq could not be found guilty unless he had the requisite knowledge of his co-defendants' intentions concerning the use of the firearms.

Additionally, failure to give the requested instruction as to As-Sadiq's knowledge of the intention to use firearms did in no way impair his ability to present a defense. As-Sadiq did not put forth evidence that he was unaware of his co-defendants' use or intended use of firearms during the robbery. Because As-Sadiq failed to raise this argument throughout the trial, the failure to grant his requested instruction as to knowledge did not affect his ability to present his defense. Thus, the district court did not abuse its discretion by declining to give his proposed instruction.

As-Sadiq also challenges the district court's failure to instruct the jury concerning the lesser included offense of unarmed robbery. To establish an entitlement to an instruction on a lesser included offense, the defendant must show that the evidence would permit a rational jury to find him guilty of the lesser offense and acquit him of the greater. *United States v. Baker*, 985 F.2d 1248, 1258 (4th Cir. 1993), *cert. denied*, 510 U.S. 1040 (1994) (citing *Keeble v. United States*, 412 U.S. 205, 208 (1973)). There is no basis in the evidence to support the lesser included offense because all evidence introduced at trial proved an armed bank robbery; as such, As-Sadiq cannot show he was entitled to the instruction.

### III.

Thomas alleges that trial counsel was ineffective in his representation because he failed to recognize and pursue an alibi defense raised by the government's evidence. Specifically, he argues that he could not have been an armed robber because the evidence establishes that

he was at As-Sadiq's house when the robbery occurred. Thomas relies on the testimony of Angel Price, a government witness whom he threatened to kill if she would not lie for him, as well as cross-examination of the bank tellers as to his identity as a robber.

A defendant can raise the issue of ineffective assistance of counsel on direct appeal only when it "conclusively appears from the record that his counsel did not provide effective assistance." *United States v. Martinez*, 136 F.3d 972, 979 (4th Cir.), *cert. denied*, 524 U.S. 960 (1998), *and* 525 U.S. 849 (1998). The standard for deciding whether a defendant received adequate assistance of counsel is one of reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The purpose of the Sixth Amendment guarantee of counsel is to ensure a fair trial; thus, at issue is "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Under *Strickland*, to sustain an ineffective assistance claim, the defendant must demonstrate that (1) counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 684-88.

Defense counsel could have reasonably determined that he could not present a viable alibi defense based on discrepancies in testimony concerning the timing of events. Other witnesses positively identified Thomas as one of the armed robbers, and the testimony of another witness as to the timing of events would have been fully consistent with Price's testimony. Because of the compelling evidence of Thomas' participation in the robbery, his attorney could have reasonably concluded that conflicting testimony about the timing of events did not provide a sound basis for an alibi defense. A review of the record does not conclusively show that trial counsel was ineffective.

## IV.

Thomas complains that there was insufficient eyewitness evidence to convict him of either armed bank robbery or brandishing a firearm during the bank robbery because the evidence did not establish his identity as one of the robbers. This claim is without merit.

The facts set forth at trial establish that the day before the robbery, Thomas went into the credit union with As-Sadiq for approximately twenty minutes; during that time he sat directly across from the tellers and spoke to them. Immediately after the robbery, Queenetta Galbreath identified Thomas as one of the robbers, and stated that he had been at As-Sadiq's house that morning. Two credit union tellers and the manager also identified Thomas as the armed robber wearing a yellow scarf and carrying a gun, and each testified that he was the same man present with As-Sadiq the day before the robbery. This evidence was sufficient to establish that Thomas was one of the armed robbers.

V.

As-Sadiq was charged as an aider and abetter under 18 U.S.C. § 924(c) for brandishing a firearm during and in relation to a crime of violence. The district court granted As-Sadiq's post-verdict motion for judgment of acquittal on this count because the government failed to prove that As-Sadiq was aware his co-defendants intended to use firearms to rob the credit union.

The standard of knowledge required to convict and aider and abetter is greater for brandishing a firearm than armed bank robbery. A defendant can be convicted of aiding and abetting armed robbery if he has notice of the likelihood that a dangerous weapon will be used. *See McCaskill*, 676 F.2d at 998. Thus, a defendant can be convicted upon a showing that he should have or was likely to have known that his co-defendant was going to use firearms.

However, a conviction of aiding and abetting § 924(c) requires a much higher standard of knowledge; proof of constructive knowledge will not suffice. "To prove that a defendant aided and abetted a violation of section 924(c), the government must establish that the defendant knew 'to a practical certainty that the principal would be [using] a gun.'" *United States v. Spinney*, 65 F.3d 231, 238 (1st Cir. 1995) (internal quotation omitted). The government must, in other words, prove the defendant had actual knowledge that a gun would be used.

The government's proof of As-Sadiq's knowledge falls short of this standard. There was no direct proof of As-Sadiq's knowledge put

forth at trial; the government only offered circumstantial evidence to show that he knew a gun would be used to commit the robbery.

*AFFIRMED*