**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-7171

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL ANTHONY ERIC DRAVEN, a/k/a Anthony James Neff,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Rebecca Beach Smith, Senior District Judge.  (4:08-cr-00016-RBS-DEM-2; 4:21-cv-00074-RBS)

_____

Argued:  May 4, 2023                              Decided:  August 10, 2023

_____

Before KING and GREGORY, Circuit Judges, and MOTZ, Senior Circuit Judge.

_____

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge King and Judge Motz joined.

_____

**ARGUED:**  James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Richmond, Virginia, Daniel J. Honold, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia for Appellee.

_____

GREGORY, Circuit Judge:

Following a jury trial, Michael Anthony Draven was convicted—and issued three concurrent life sentences—for conspiracy to commit murder for hire resulting in death in violation of 18 U.S.C. § 1985(a), aiding and abetting carjacking resulting in death in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2, and one count aiding and abetting murder with a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(j) and 18 U.S.C. § 2. The first two convictions served as the predicate offenses for Draven's third conviction.

Draven now appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction. He argues that following the Supreme Court's decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2015 (2022), his predicate offenses no longer qualify as crimes of violence under 18 U.S.C. § 924(c)(3).

We do not agree. For the reasons to follow, we conclude that because aiding and abetting carjacking resulting in death remains a valid predicate offense under § 924(c)(3)(A), Draven's § 924(j) conviction must stand. That predicate, alone, is sufficient to support his § 924(j) conviction. We, therefore, affirm the district court's denial of Draven's habeas motion.

I.

A.

This Court is no stranger to the plot that resulted in Cory Voss's murder. *See United States v. Draven*, 417 F. App'x 362 (4th Cir. 2011) (per curiam); *United States v. Runyon*,

2

707 F.3d 475 (4th Cir. 2013); *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).  For

brevity's sake, we briefly recount the relevant facts.

Draven entered into a conspiracy with Catherina Voss to kill her husband, Cory.  At

the time, Draven and Catherina were having an affair; the two decided to murder Cory so

that Catherina, who was the primary beneficiary of Cory's life insurance policy, could

collect the $400,000 it was worth.  After Draven met David Runyon at a drug-research

study, Draven and Catherina hired him to commit the murder.

A concise overview, and execution, of the plan follows.  Catherina opened an

account at a local bank branch in Newport News, where she made a five-dollar deposit.

On the night of the planned murder, Catherina sent Cory to withdraw cash from the bank's

ATM.  While Cory stood at the ATM, video surveillance footage showed an unidentified

person—later determined to be Runyon—enter Cory's truck.  Cory returned to his vehicle

and drove away but returned shortly after to withdraw additional money.  However, he was

denied due to insufficient funds.  The next morning, Cory's body was discovered in his

truck, riddled with close-range gunshot wounds.

Draven, Catherina, and Runyon were eventually arrested and charged with:

conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958(a) (Count 1);

carjacking resulting in death, in violation of 18 U.S.C. §§ 2119, 2 (Count 2); bank robbery

resulting in death, in violation of 18 U.S.C. §§ 2113(a), (e), 2 (Count 3); conspiracy to

commit robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) (Count 4); and

murder with a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(j)

and 2 (Count 5).  Count 3 was eventually dismissed by the court and Counts 1 through 4 served as the predicate "crime of violence" offenses for Count 5.

While Catherina pled guilty, Draven and Runyon proceeded to a jury trial.  Draven was eventually convicted of conspiracy to commit murder for hire (Count 1), aiding and abetting carjacking resulting in death (Count 2), and murder with a firearm in relation to a crime of violence and aiding and abetting such conduct (Count 5).  The jury also acquitted Draven of Count 4 and he was sentenced to three concurrent life imprisonment terms.[1]  We affirmed his conviction on appeal.  *See Draven*, 417 F. App'x at 364.

## B.

Following a series of motions, on April 7, 2021, this Court granted Draven's June 2020 request for authorization to file a successive § 2255 motion.  *See* Order, *In re Draven*, No. 20-344, 4:08-cr-00016-RBS-DEM-2 (4th Cir. Apr. 7, 2021).  Draven argued that the Supreme Court's recent holding in *United States v. Davis* 139 S. Ct. 2319 (2019), announced a new rule of constitutional law by striking down 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague.

Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in the furtherance of,' any federal 'crime of violence or drug trafficking crime.'"  139 S. Ct. at 2324 (quoting § 924(c)(1)(A)).  Under § 924(c)(3), a "crime of violence" is "an offense that is a felony"

---

[1] Similarly, Runyon was convicted of Counts 1, 2, and 5 and also acquitted on Count 4.  As the triggerman, however, his trial continued pursuant to the Federal Death Penalty Act.  Ultimately, the jury found him eligible for the death penalty and we affirmed his conviction.  *See Runyon*, 707 F.3d at 521.

4

that either: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property or another," or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* Courts often refer to the former— § 924(c)(3)(A)—as the "elements clause,"[2] and to the latter—§ 924(c)(3)(B)—before it was struck down in *Davis*, as the "residual clause."

In light of *Davis*, Draven contended, his conspiracy to commit murder for hire conviction was no longer a crime of violence under the elements clause and thus could not serve as a predicate for his § 924(j) conviction. With our authorization, Draven brought a *Davis*-based § 2255 motion in the district court.

Just months before allowing Draven's motion to proceed, we became reacquainted with his co-defendant, Runyon, who appealed the denial of his § 2255 motion. *See United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021). We granted a certificate of appealability concerning a handful of issues, including "whether Runyon's § 924 conviction [was] invalid because the offense was not committed during and in relation to a 'crime of violence.'" *Id.* at 197. Runyon argued that his § 924(j) conviction was invalid because the predicate crimes for his conviction—conspiracy to commit murder for hire and carjacking—do not "*necessarily* require[] for conviction the 'use of physical force'" and therefore do not qualify as crimes of violence under 924c's elements clause." *Id.* at 199 (cleaned up). As to the carjacking conviction, he argued that that crime "may be

---

[2] The elements clause is also commonly referred to as the "force clause." *See e.g.*, *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc).

5

accomplished with intimidation," without the use of "strong physical force." *Id.* And with regards to the conspiracy offense, he insisted that it "requires merely an agreement to act, which cannot qualify as physical force . . . [because it] lacks the requisite mens rea inherent in the 'use' of physical force." *Id.* Finally, because the jury failed to specify which predicate his § 924(j) conviction rested on, Runyon maintained that it was the government's duty to demonstrate that both predicates qualified as crimes of violence. *Id.* We rejected each of these arguments.

To start, we quickly disposed of the carjacking offense because, per our holding in *United States v. Evans*, 848 F.3d 242 (4th Cir. 2017), "a conviction under § 2119 is categorically a conviction for a crime of violence." *Id.* at 201 (citing *Evans*, 848 F.3d at 245). Therefore, we held that Runyon's carjacking offense remains a crime of violence that supports his conviction under § 924(j).

As to the remaining § 1958(a) offense, we determined that it, too, qualified as a crime of violence under § 924(c)(3)'s elements clause. Finding that § 1958(a) contained multiple alternative elements for conviction, we applied the modified categorical approach, looking briefly to the record to determine "what crime, with what elements, [the] defendant was convicted of." *Id.* at 201 (quoting *Mathis v. United States*, 579 U.S. 500, 505–06 (2016)).

We decided that Runyon was specifically convicted of entering a conspiracy to use facilities of commerce with the intent that a murder be committed for hire where death

6

results.[3]  That conspiracy offense has a "heightened mens rea element[]" and the additional "element that 'death results.'"  *Id.* at 203.  This, we explained, "has the requisite mens rea to constitute a *use* of physical force."  *Id.*  (quotation marks and citation omitted).  Although the mens rea is "not explicitly tied to the resulting-in-death element," it "must nonetheless carry forward" to this element.  *Id.*  Further, "this specific intent ensures that the victim's death was necessarily the result of a *use* of physical force."  *Id.* at 204.  Thus, we held that a "conspiracy to commit murder for hire where death results" involves the "use of physical force.'"  *Id.*

We granted Draven leave to file an amended § 2255 motion to address our decision in *Runyon*.  In addition to the *Davis*-based arguments asserted before us, Draven—now with retained counsel—contended that, although carjacking resulting in death remained a crime of violence under the categorical approach, the jury's general verdict as to Count 5 did not specify which predicate the § 924(j) conviction rested upon.

Pending *Runyon*'s anticipated petition for certiorari, the district court stayed Draven's amended § 2255 motion.  However, Draven later informed the district court that

---

[3] In *Runyon*, we determined that § 1958(a) sets out "six distinct possible crimes," which are:

> (1) using facilities of commerce with the intent that a murder be committed for hire; (2) conspiracy to use facilities of commerce with the intent that a murder be committed for hire; (3) using facilities of commerce with the intent that a murder be committed for hire where personal injury results; (4) conspiracy to use facilities of commerce with the intent that a murder be committed for hire where personal injury results; (5) using facilities of commerce with the intent that a murder be committed for hire where death results; and (6) conspiracy to use facilities of commerce with the intent that a murder be committed for hire where death results.

994 F.3d at 202.

7

Runyon had failed to file a petition for certiorari. The district court then denied Draven's § 2255 motion and declined to issue a certificate of appealability, holding that Draven's request for relief was foreclosed by our decision in *Runyon*. And regardless of Draven's conspiracy conviction, the court reasoned that Draven would not be entitled to relief given that aiding and abetting carjacking resulting in death remains a valid predicate post-*Davis*.

Draven timely appealed. In his informal briefing before this Court, Draven reiterated that his Count 5 conviction can stand only if both of the predicates qualify as crimes of violence. Although he conceded that carjacking resulting in death remained a crime of violence under the categorical approach, Draven contended that the jury may not have relied on that predicate because the jury returned a general verdict form without indicating which predicate the § 924(j) conviction relied on.

We granted a COA to consider whether Draven's § 924(j) conviction remains valid in light of *United States v. Davis* and *United States v. Taylor*.[4]

## II.

### A.

This Court reviews denials of § 2255 motions de novo. *United States v. McKinney*, 60 F.4th 188, 191 (4th Cir. 2023). We also review de novo the legal question "whether a particular criminal offense qualifies as a crime of violence under Section 924(c)." *Evans*, 848 F.3d at 245.

---

[4] As discussed at length below, the Supreme Court issued its decision in *Taylor* following Draven's informal briefing submission but prior to our decision to grant him a certificate of appealability.

8

Section 924(j) criminalizes "any person, who, during and in relation to any crime of violence causes the death of a person through the use of a firearm." *Runyon*, 994 F.3d at 199 (quoting § 924(c)(1), (j)(1)) (emphasis omitted). Those convicted "shall—if the killing is a murder . . . , be punished by death or by imprisonment." § 924(j)(1). Section 924(c)(3)(A)'s force clause—the remaining valid provision under § 924(c)(3) following the Supreme Court's decision in *Davis*—defines a "crime of violence" as "an offense that is a felony and[] has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).

In determining whether an offense qualifies as a crime of violence under § 924(c)(3)(A), we either apply the categorical or modified categorical approach. Under the categorical approach, this Court "analyze[s] only the elements of the offense in question, rather than the specific means by which the defendant committed the crime." *Evans*, 848 at 245–46. We do not take the defendant's actual conduct into consideration but ask whether "the most innocent conduct that the law criminalizes" requires the use, attempted use, or threatened use of force sufficient to satisfy § 924(c)(3)(A)'s elements clause. *United States v. Drummond*, 925 F.3d 681, 689 (4th Cir. 2019) (citation omitted).

On the other hand, when presented with divisible statutes—"those that list potential offense elements in the alternative and thus include multiple alternative versions of the crime"—we utilize the modified categorical approach. *United States v. Ali*, 991 F.3d 561, 572–73 (4th Cir. 2021) (cleaned up). The modified categorical approach allows the sentencing court to assess a limited set of record documents—including the indictment, jury instructions, or plea agreement—for the primary purpose of determining "what crime,

9

with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505. Once the court has established which of the elements under the divisible statute the defendant was convicted of, it must return to the categorical approach to determine whether that specific crime constitutes a crime of violence under the force clause. *See Allred*, 942 F.3d at 648.

                                                    B.

Draven argues that the Supreme Court's decisions in *United States v. Davis* and *United States v. Taylor* undermine the validity of his § 924(j) predicates. We therefore start by providing an overview of those decisions.

We begin with *Davis*. There, the defendants challenged their § 924(c) convictions, one of which was predicated on conspiracy to commit Hobbs Act robbery , 18 U.S.C. § 1951(a). *Davis*, 139 S. Ct. at 2324. On appeal, the defendants argued that § 924(c)'s residual clause was unconstitutionally vague. The Supreme Court agreed. *Id.* at 2236. Thus, "[p]ost-*Davis*, an underlying 'crime of violence' must satisfy the force (or elements) clause of § 924(c)(3)(A)." *United States v. Jackson*, 32 F.4th 278, 283 (4th Cir. 2022). This Court subsequently held that the new rule established in *Davis* was retroactively available to cases before us on collateral review. *See In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021).

In 2022, the Supreme Court heard *Taylor*, where it considered whether attempted Hobbs Act robbery qualified a crime of violence under § 924(c) in the wake of *Davis*. 142 S. Ct. at 2018. The Court held that the offense "does not satisfy the elements clause" and therefore is not a valid § 924(c) predicate. *Id.* at 2020.

Applying the categorical approach, the Court considered which elements the government must prove to convict a defendant on *completed* Hobbs Act robbery versus

                                                    10

*attempted* Hobbs Act robbery. *Id.* at 2020. For the former, the Court said, the government "must show that the defendant engaged in the 'unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force.'" *Id.* (quoting § 1951(b)). The latter, by contrast, requires the government only to prove: "(1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.*

The Court determined that the elements of attempted Hobbs Act robbery do not necessarily involve physical force, as required by the elements clause. Although the government "must show an intention to take property by force or threat, along with a substantial step toward achieving that object. . . . an intention is just that, no more." *Id.* Further, "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

## III.

Having addressed the relevant Supreme Court precedent to this appeal, we turn to Draven's arguments before us.

### A.

Draven challenges the validity of his two predicate offenses underlying his § 924(j) conviction: (1) aiding and abetting carjacking resulting in death in violation of §§ 2119 and 2, and (2) conspiracy to commit murder for hire resulting in death in violation of

11

§ 1958(a). He insists that, post-*Davis* and *Taylor*, neither qualifies as a crime of violence that satisfies § 924(c)'s elements clause. We take each in turn.

1.

In order to consider the merits of Draven's aiding and abetting carjacking resulting in death predicate, we must first address the government's contention that Draven has procedurally defaulted this claim.

At the outset, the government asserts that Draven's challenge to his carjacking predicate is procedurally barred because he failed to question its validity during his initial criminal proceedings or on direct appeal. In his reply brief, Draven argues that his claim is not procedurally barred because *Davis* established a substantive new rule that was previously unavailable to him, and because the COA we granted specifically requested that he address the effect of both *Davis* and *Taylor* on his § 924(j) conviction.

It is true that Draven did not make his *Taylor*-based claim during his original proceedings or on direct appeal. Thus, Draven has procedurally defaulted this claim. *See United States v. Fugit*, 703 F.3d 248, 253 (holding that defendant's claim was procedurally defaulted because he had failed to make the statutory argument during initial plea proceedings that he now raised on collateral review). And, "[w]ithout an excuse for this failure, the procedural-default doctrine precludes a defendant from asserting that claim on collateral review." *McKinney*, 60 F.4th at 193.

However, an avenue does exist for § 2255 petitioners to raise their procedurally defaulted claims on collateral review. To do so, Draven must demonstrate "both *cause* excusing his procedural default and actual *prejudice* resulting from the errors of which he

12

complains," *United States v. Landrum*, 93 F.3d 122, 124 (4th Cir. 1996) (cleaned up) (emphasis added), or "that he is 'actually innocent,'" *United States v. Green*, 67 F.4th 657, 666 (4th Cir. 2023) (quoting *Bousley v. U.S.*, 523 U.S. 614, 622 (1998)).[5]

To prove cause, Draven must demonstrate that there was "some external impediment preventing [his] counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). That includes claims that are "so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). Moreover, a showing of prejudice requires a petitioner to establish that the procedural default "worked to his *actual* and substantial disadvantage." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).[6]

---

[5] To prove their "actual innocence," the petitioner must first raise the excuse and "demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (cleaned up). Because Draven has failed to present an argument concerning his "actual innocence," we decline to address the issue here.

[6] Instead of addressing cause and prejudice, Draven offers several alternative reasons to excuse his procedural default. *See* Reply Br. at 7–11. However, each argument fails because the proper standard before us on collateral review is the cause-prejudice standard.

Even assuming, without deciding, that Draven can establish cause,[7] his procedural default argument fails because he cannot establish prejudice.[8]

Draven argues that "aiding and abetting liability are rendered untenable following the Supreme Court's decision in *Taylor*." Opening Br. at 19. He thus asserts that aiding and abetting carjacking resulting in death is not an offense under the elements clause of Section 924(c)(3)(A) and "cannot serve as the predicate offense for the Section 924(j) conviction." *Id.* at 21. Our precedent says otherwise.

The relevant portions of the carjacking statute provide that:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, attempts to do so, shall . . . if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

§ 2119(3). And aiding and abetting, under 18 U.S.C. § 2, indicates that:

---

[7] It goes without saying that Draven could not make this argument because his 2009 conviction and his subsequent direct appeal were years before the Supreme Court's 2022 decision in *Taylor*. Notably, this Court recently indicated that defendants raising challenges to their § 924(c) convictions issued prior to the Supreme Court's holdings in *Johnson v. United States*, 576 U.S. 591 (2015), or *Davis* will likely be able establish cause for the cause-prejudice excuse to procedurally defaulted claims. *See McKinney*, 60 F. 4th at 195 (collecting cases and holding that defendant established cause where claim raised on direct appeal challenging the vagueness of § 924(c)(3)(B) was foreclosed until the Supreme Court's decision two years later in *Johnson* struck down residual clause for vagueness). However, we need not reach this issue here because, regardless of Draven's ability to demonstrate cause, he cannot show prejudice.

[8] The government also argues that Draven has waived this claim because, before the district court and in his informal briefing before us, he maintained that carjacking was a valid predicate given our precedent in *Evans*. Because we reconcile Draven's appeal on procedural default grounds, we need not resolve the government's additional waiver argument.

14

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In *Evans*, this Court held that carjacking resulting in death is a crime of violence under § 924(c)(3)(A)'s force clause. 848 F.3d at 247–48. There, we revisited our holding in *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016)—where we determined that the case's relevant bank robbery statute's use of the term "intimidation . . . , required the use of physical force, and that, therefore, the federal crime of bank robbery categorically qualified as a crime of violence under . . . § 924(c)(3)[(A)]." *Id.* at 247 (quoting *McNeal*, 818 F.3d at 153). In *Evans*, we remarked on the undeniable similarities between the bank robbery statute and the carjacking statute; both statutes require that the property in question be taken "by force and violence, or by intimidation." *Id.* (quoting 18 U.S.C. §§ 2113 & 2119). Given that identical language, we relied on *McNeal* to hold that the carjacking statue's "term 'intimidation' used in this context means a threat of violent force . . . within the meaning of" the force clause of § 924(c)(3)(A)(3). *Id.* And although only one provision under § 2119 was at issue, our analysis extended to the entirety of the statute, as "the element of using 'force and violence' or 'intimidation,'" was "common to all three versions of the crime." *Id.* at 246 n.3. Thus, we held that all three provisions under § 2119 qualify as crimes of violence under § 924(c)(3)(A).

We reiterated this holding in *Runyon*'s § 2255 appeal. *See Runyon*, 994 F.3d at 201. In addressing Runyon's challenge to his carjacking resulting in death predicate, we cited

15

*Evans* and declined his invitation "to overrule" the case, applying the well-settled rule that "one panel cannot overrule another." *Id.* at 201 (quoting *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc)).

Then, in *Ali*, we decided that per § 2, "aiding and abetting a crime of violence is *also* categorically a crime of violence." 991 F.3d at 574 (emphasis added). At the outset of our analysis, we noted that because we had previously held that Hobbs Act robbery—the offense at issue there—was itself a crime of violence, "we need only determine whether aiding and abetting [also qualifies as] a crime of violence." *Id.* at 573. Aligning ourselves with our sister circuits, we concluded that because § 2 "does not set forth an essential element of an offense . . . aiding and abetting a crime *has the exact same elements as the principal offense*." *Id.* (cleaned up) (emphasis added). In other words, the law "generally treats aiders and abettors the same as principals," and therefore aiding and abetting a crime of violence also qualifies as a crime of violence. *Id.*

Draven's challenges here cannot penetrate our overwhelming precedent. Under *Evans*, carjacking—including carjacking resulting in death under § 2119(3)—is a crime of violence. That Draven was charged and convicted in tandem with § 2's aiding and abetting charge does not alter our analysis because, under *Ali*, aiders and abettors are treated as principals. So, because our precedent clearly dictates that carjacking resulting in death is a crime of violence, so too is aiding and abetting carjacking resulting in death.

Even so, Draven disagrees, positing that the Supreme Court's holding in *Taylor*—which concluded that *attempted* Hobbs Act robbery is not a crime of violence—renders our holdings in *Evans* and *Ali* untenable. Specifically, he asserts that the attempted Hobbs

16

Act robbery element requiring "an intention to take property by force or threat, along with a substantial step toward achieving that object"—which *Taylor* held did not satisfy the elements clause, 142 S. Ct. at 2020—is "indistinguishable" from the requirements for establishing aiding and abetting, and thereby invalidates this predicate offense. Opening Br. at 19. We are not persuaded.

To establish this claim, Draven turns to an unpublished, pre-*Evans* and *Ali* case: *United States v. Thomas*, 58 F. App'x 952 (4th Cir. 2003). There, we stated that for the government to support a defendant's conviction as an aider and abettor, it "must establish that the defendant participated in the principal's criminal intent and the unlawfulness of his activity," and "only participation at some stage accompanied by knowledge of the result and intent to bring about that result," was required. *Id.* at 956 (quoting *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc), *cert. denied* 519 U.S. 1151 (1997)).

Draven also relies on *Taylor*, wherein the Supreme Court indicated that while attempted Hobbs Act robbery required the government to prove that "(1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." 142 S. Ct at 2020. Those elements, the Supreme Court held, "do[] not satisfy the elements clause" because "an intention is just that, no more" and, "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or threatened to use force against another person or his property." *Id.*

Draven contends that the "some act," as the district court in *Thomas* instructed, and "intention of causing a crime" required by *Thomas*, 58 F. App'x at 958, to establish aiding

17

and abetting liability are synonymous with the "substantial step" and "intention" required by *Taylor*, 142 S. Ct at 2020, to establish attempted Hobbs Act robbery.  Given the similarities between aiding and abetting and attempt, Draven concludes that *Taylor*'s holding that attempted Hobbs Act robbery is not a crime of violence "cannot be read to be limited only to attempts in the context of the elements clause."  Opening Br. at 20.

Although we appreciate the rigor of Draven's argument, we view things differently. First, unlike the query we are concerned with today, *Thomas* focused on a wholly different question:  whether there was sufficient evidence to establish defendant's *guilt* on his aiding and abetting charge.  58 F. App'x at 955–56; *see also Burgos*, 94 F.3d at 873 (holding that "[a] defendant is guilty of aiding and abetting if he has knowingly associated himself with and participated in the criminal venture." (cleaned up)), *United States v. Odum*, 65 F.4th 714, 721 (4th Cir. 2023) (same).  Draven's guilt under this charge is not at issue and has long been established by a jury.  Instead, the only question we are concerned with today is whether aiding and abetting carjacking resulting in death remains a valid predicate under § 924(c)(3)(A)'s elements clause.  Therefore, *Thomas* turns on a question dispositive to this appeal.

Even more, aiding and abetting and attempt are not comparable offenses.  *See Ali*, 991 F.3d at 574 n.5 (stating that aiding and abetting a crime of violence is "unlike attempted Hobbs Act robbery because [the latter] adds an element the Government must prove . . . and that new element can be satisfied by a 'substantial step' that is not violent." (citation omitted)).  *United States v. Groves*, 65 F.4th 166, 170–71 (4th Cir. 2023) (noting that "aiding and abetting has its own [sentencing] guideline providing . . . that its offense level for aiding and abetting is the same level as that for the underlying offense. . . .  Meanwhile,

18

an attempt offense is punished under the Guidelines as a lesser offense than the substantive offense to which it relates." (cleaned up)); *compare United States v. Allen*, 909 F.3d 671, 675 (4th Cir. 2018) ("[T]he long-standing rule [is] that an aider and abettor to a crime generally is punishable under federal law as a principal."), *with United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003) ("An attempt to commit a crime . . . is recognized as a crime distinct from the crime intended by the attempt . . . ."). Due to this, Draven's reliance on *Thomas*'s aiding and abetting language cannot overcome the well-established precedent holding that the elements of aiding and abetting a crime are, instead, synonymous with those of the principal offense.

It naturally follows then that aiding and abetting and attempt offenses are not one and the same. Whereas aiding and abetting a crime possesses the same elements as the underlying offense, "*Taylor* hinge[s] on the fact that attempt is a separate crime from the underlying offense, with the distinct element of a 'substantial step'" which a defendant could take "without also committing all the elements of Hobbs Act robbery." *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023) (quoting *Taylor*, 142 S. Ct at 2020). And because the Supreme Court did not explicitly instruct on *Taylor*'s reach beyond the purview of *attempted* Hobbs Act robbery, it is not in our authority to expand its scope today.

For these reasons, we disagree with Draven's newly raised assertion and hold that because aiding and abetting carjacking resulting in death remains a crime of violence, his procedural default did not "work[] to his *actual* and substantial disadvantage" to sufficiently demonstrate prejudice. *Murray*, 477 U.S. at 494.

19

2.

Because we have concluded that aiding and abetting carjacking resulting in death remains a valid predicate, we need not reach the validity of Draven's second predicate—conspiracy to commit murder for hire resulting in death—to affirm Draven's § 924(j) conviction.[9]  Draven disputes this because the jury's general verdict form did not specifically indicate whether either—or both—of his convictions served as the predicate offense for his § 924(j) conviction.  In his view, then, his § 924(j) conviction can only stand if both predicate offenses qualify as crimes of violence under § 924(c)(3)(A).  Not so.

Even if conspiracy to commit murder does not itself qualify as a crime of violence, we must apply "the harmless-error standard articulated in *Brecht v. Abrahamson*, in which the Supreme Court held that an error is harmless if it did not have a substantial and injurious effect of influence in determining the jury's verdict."  *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (cleaned up).  Under the harmless-error standard, Draven is required to prove "that there is more than a reasonable possibility that the error was harmful."  *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 268 (2015)) (cleaned up).  Specifically, he must demonstrate "'more than a reasonable possibility' that the jury *only* found him guilty on" § 924(j) "because it improperly considered" an invalid predicate "to be [a] crime[] of violence."  *Id.* at 662 (quoting *Davis*, 576 U.S. at 268).

---

[9] Draven also argues that we should consider the Supreme Court's recent decision in *Borden v. United States*, where the Court held that a criminal offense cannot qualify as a "violent felony" if it solely required a mens rea of recklessness.  141 S.Ct. 1817, 1821–22 (2021).  However, we need not address this case, given that our narrow conclusion does not reach the arguments Draven asserts pertaining to *Borden*.

Draven has not satisfied this burden.  In order "[t]o support a conviction under § 924(c) for using or carrying a firearm during and in relation to a 'crime of violence,' the Government need only prove *one* qualifying predicate offense."[10]  *Jackson*, 32 F.4th at 283 (emphasis added).  And for the purposes of demonstrating prejudice, "mere uncertainty as to which . . . predicate or predicates the jury relied on" is not enough.  *Said*, 26 F.4th at 661 (cleaned up).

As the general verdict form here indicates, the jury separately found Draven guilty of both the carjacking and conspiracy offenses.  *See* J.A. 1784.  To convict him of the § 924(j) offense, the jury needed only to determine that one of those two offenses qualified as a § 924(c) predicate.  *See* J.A. 1668–70 (jury instructions explaining that "to sustain its burden of proof for the crime of murder with a firearm in relation to a crime of violence . . . , the government must prove," *inter alia*, "the use or carrying of the firearm occurred during and in relation to a crime of violence . . . specifically the crimes referenced in Counts One [and] Two."), J.A. 1751 (Jury Instruction No. 59 demonstrating that a conviction under Count 5's § 924(j) relies on establishing guilt under § 924(c)).  Draven has not argued, much less shown, that there is more than a reasonable possibility the jury relied *only* on conspiracy to commit murder for hire — and *not* on aiding and abetting carjacking — to convict him of violating § 924(j).  *See* Oral Arg. at 11:28–11:42 (conceding as much).

---

[10] Although Draven's predicate offenses enhanced a § 924(j)—not § 924(c)—charge and conviction, the former provision directly relies upon the latter to establish guilt. *See* § 924(j)(1) (stating that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—if the killing is murder . . . be punished by death or by imprisonment for any terms of years or for life").

21

Accordingly, because aiding and abetting carjacking resulting in death is a valid predicate under § 924(c)(3)(A)'s force clause for the reasons discussed at length above, we must uphold Draven's § 924(j) conviction.[11]

## IV.

In sum, we conclude that, post-*Davis* and *Taylor*, aiding and abetting carjacking resulting in death remains a crime of violence under either § 924(c)(3)(A)'s force or elements clause. Due to this, we need not reach the validity of Draven's conspiracy to commit murder for hire resulting in death predicate and we hold that his § 924(j) conviction stands irrespective of the ambiguity in the general verdict form. Thus, we affirm the district court's denial of Draven's § 2255 motion.

*AFFIRMED*

---

[11] Although we decline to reach the merits of Draven's conspiracy to commit murder for hire resulting in death argument, we do not foreclose the impact that *Taylor* may have on *conspiracy* to commit murder for hire as a crime of violence, because conspiracy, like the attempted crime described in *Taylor*, involves the analysis of elements that do not satisfy § 924(c)(3)(A). *See e.g.*, *Simms*, 914 F.3d at 233 (en banc) (holding that conspiracy to commit Hobbs Act robbery is not a crime of violence under § 924(c) because the government need only prove an agreement "to commit actions that, if realized, would violate the Hobbs Act," but "[s]uch an agreement does not invariably require the actual, attempted, or threatened use of physical force."). However, that question is not before us today.